A. M. SLOAN & CO. *v.* ROBERT J. McDOWELL.

Where a firm brings a defendant into Court to answer a claim for a debt which he owes them, he cannot only require *them* but either *one* of them to answer for a debt due him, whether it is connected specially with their debt against him, or is an independent claim.

(*Neal & Johnson* v. *Lea et al.* 64 N. C. Rep. 678; *Harris* v. *Burwell*, 65 N. C. Rep. 678; *March* v. *Thomas*, 63 N. C. Rep. 87, and *Clark* v. *Williams*; and *Walker* v. *Flemming*, at this Term, cited and approved.)

RODMAN—*Dissenting.*

CIVIL ACTION, for the recovery of an account due the firm, tried at Fall Term, 1873, of MECKLENBURG Superior Court, before *Logan, J.,* upon a demurrer to the answer of defendant.

All the facts relating to the points decided are fully stated in the opinion of Justice READE, and the dissenting opinion of Justice RODMAN.

Defendant appealed from the judgment of the Court below.

*H. W. Guion,* for appellant.
*Wilson & Son,* contra.

READE, J. The action is upon a partnership claim against the defendant for merchandise sold and delivered, and for money paid to his use.

The answer denies that the defendant ever had any dealings with the partnership, or authorized any one else to have for him. But admits that he contracted with the plaintiff, A. M. Sloan, for the articles contained in the bill of particulars filed by plaintiffs in his individual capacity, and with the understanding and agreement with said A. M. Sloan, that the amount was to be entered as a credit upon a bond for a much larger amount which he had against said A. M. Sloan, and that the credit was so entered.

The defendant then sets up the said bond as a counter-claim against said A. M. Sloan, and demands judgment against him

for the remainder after deducting the plaintiff's bill of particulars.

The plaintiffs demur to the counter-claim, and assign for cause, "that said alleged counter-claim does not state facts sufficient to constitute a cause of action against the plaintiffs in this, that the counter-claim sets up an alleged individual indebtedness on the part of A. M. Sloan to the defendant," &c.

And for second cause of demurrer, that an action is pending in the Circuit Court of the United States for said counterclaim. And then it was referred to H. C. Jones, Esq., to decide upon the demurrer, who sustained the demurrer for the first cause and overruled it for the second, and upon exceptions, so did his Honor, and the defendant appealed.

We think there was error in sustaining the demurrer. The plaintiffs come into Court with a joint claim against the defendant which he denies; and he makes a claim against one of them which they admit. And then we have C. C. P., sec. 248: "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may determine the ultimate rights of the parties, on each side as between themselves. And it may grant to the defendant any affirmative relief to which he may be entitled."

Reading it as applicable to this case, may grant to the defendant affirmative relief against A. M. Sloan, one of the plaintiffs. It is suggested that this cannot be, in this case, because the plaintiff, A. M. Sloan, has not been served with process to bring him into Court. The answer is, that service of process is not necessary where the party appears and pleads; and here he does appear and plead. He both demurs and pleads—demurs because the counter-claim is against one, and not against both of the plaintiffs; and pleads (for so the second cause for demurrer must be understood) that a suit for the same is pending in another Court.

It will be observed that the demurrer shoots wide of the mark. It objects that the counter-claim is not a cause of action

against the *plaintiffs*. It does not profess to be; but only against *one* of the plaintiffs. But it no doubt intends to raise the question whether in an action by two plaintiffs against one defendant, the defendant can have affirmative relief against *one* of the plaintiffs. It is the plain letter of the statute above quoted, that he can. And it is not denied that he can, as to any matter connected with the subject matter of the suit; but not as to any independent matter. If it be thus restricted, what is the use of the provision? None, because in that case he can have relief against both the plaintiffs, which is better than against one, or at least as good. So that if that is to be the construction, the Code gives the defendant no advantage which he did not have before, or would not have had without it. It is said that this section in the Code is a copy of the New York Code, and yet we are not informed of any New York decision in which such a restricted construction has been given. We are of the opinion that the proper construction of the Code is, that when the plaintiffs bring the defendant into Court to answer a claim for debt which he owes them, that he cannot only require *them*, but either *one* of them, to answer for a debt due him; whether it is connected specially with their debt against him, or is an independent claim. And this not as a set-off to the claim sued on, but as an affirmative judgment. Indeed, this can scarcely be said to be an open question; because in *Neal & Johnson* v. *Lea and others*, 64 N. C. Rep. 678, it is said by PEARSON, C. J.: "By C. C. P., sec. 101, the plea of set-off is merged in the defence of counter-claim.

By paragraph 2, the counter-claim in an action on contract embraces not only matter that under the old practice was pleaded as a set-off, but every other cause of action arising out of contract, whether legal or equitable between the plaintiff and defendant. When there are more than one plaintiff or defendant it is further extended, so that not only mutual debts between the plaintiffs and defendants, or any one of them, against the plaintiff, or any one of them between whom a sev-

eral judgment might be had in the action, is embraced." And that case was subsequently carefully reviewed in *Harris* v. *Burwell*, 65 N. C. Rep., 678, and overruled in part; yet it has never been disturbed upon this point. And so in *Clark* v. *Williams*, at this term, we gave judgment for the plaintiff against several defendants for unequal proportions, and judgment for one of the defendants against the other defendants in unequal proportions, and in a matter in which the plaintiff had no interest, thus adjusting the right of all the parties before the Court. See *Walker* v. *Flemming*, at this term.

We are of the opinion that the demurrer ought to have been overruled, and that the defendant has the right to set up his counter-claim and have affirmative relief, as against A. M, Sloan *one* of the plaintiffs. And this disposes of the only point upon which the case *now* before us, rests. The question of set off will come up on another trial, if the plaintiffs shall establish their claim against the defendant. I suggest however, as what occurs to me from the full argument before us upon the question of set off, and from the authorities which I have consulted; that the general rule is, that a claim of a defendant against one partner is not a set off against a claim of the partnership against him, eitheir in law or equity. But to this general rule there are several well established exceptions; and some other exceptions in regard to which there are contradictory decisions. The established exceptions are (1) where there was an agreement between the partnership and the defendant that it should be so; (2) Where there has been a settlement of the partnership and a *surplus* in favor of the debtor; (3) Where the partner against whom the defendant has a separate claim is insolvent outside of his interest in the partnership. I put this down among the established exceptions although there are contradictory decisions upon it in England and in some of our sister States; yet in our State it is settled in *March* v. *Thomas*, 63 N. C. R. 87, and the cases there cited, where it is said by Judge BATTLE: "When the plaintiff or one of the plaintiffs is insolvent, a bond or note due from him to the defendant may

be set off in equity without a strict regard to mutuality;" (4) Where, as in our case, the *partnership* did not agree, but *one* of the partners did, that the individual claim of the defendant against him should be set off against the firm debt; this is a good defence to a suit by the partnership *at law.* Lindly on Partnership 170, from whom I quote as follows : " For example, if a partner pledges partnership property, and in so doing clearly acts beyond the limits of his authority, still as *he* can not dispute the validity of his own act, he and his co-partners cannot recover the property so pledged by an action at law. So, although a partner has no right to pay his own separate debt by setting off against it a debt due from his creditor to the firm ; yet if he actually agrees that such set off shall be made, and it is made accordingly, he and his co-partners cannot afterwards in an action recover the debt due the firm. As observed by Lord TENTERTON in *Jones* v. *Gates,* there is no instance in which a person has been allowed as plaintiff in a Court of law, to recind his own act on the ground that such act was a fraud on some other person, whether the person seeking to do this has sued in his own name or jointly with such other person. This doctrine has been carried so far that even when the partner whose conduct is relied upon as an answer to an action by the firm is dead, the surviving ex-partners have been held not entitled to sue."

While this is so *at law,* and while under this rule one partner might commit a fraud upon his co-partner, yet in equity the co-partner can have relief by a bill against the debtor partner and his creditor, charging the fraud and showing the injury to himself. As was the well considered case of *Peirey* v. *Finney,* 12 Eg. cases 67. But note, that to entitle the co-partner to relief he must show *fraud ;* as that the debtor partner had not so much as that interest in the firm; or that there were partnership debts to pay. If the debtor partner has a greater interest in the firm than he has disposed of, and if there are no debts to pay, then the co-partner has no relief either in law or equity, and needs none; because he has sus-

tained no injury, and need only charge the debtor partner with so much as he has appropriated to his own use. That is precisely our case, except that our case is made stronger by the facts that A. M. Sloan is admitted to be solvent; and that the firm will not be injured by the appropriation which he made of the partnership effects to pay his own debt to the defendant. Adams, Eq., 244.

Suppose the plaintiffs get judgment against the defendant upon their claim; and the defendant gets judgment against one of the plaintiffs upon his counter-claim, in excess of the plaintiff's claim; then, the defendant would be entitled to an account of the partnership, and to have his judgment satisfied out of the partnership effects, if there should be a surplus due the debtor partner. Just as the defendant would have the right to levy on and sell his interest in the partnership, and then have an account.

If, as is alleged, the plaintiffs are non-residents it furnishes a strong equity that they should not be allowed to recover of the defendant, and put upon him the necessity to go out of the State to pursue his rights against one of the plaintiffs; when, as that plaintiff is solvent, no injury can result to the partnership, or to the creditors thereof, by allowing the defendant to enforce his rights here according to the agreement between him and the plaintiff A. M. Sloan.

So, the plaintiffs cannot recover at law, because of the agreement of one of the plaintiffs; and they cannot recover in equity, because neither the co-partner, nor the creditor can be injured.

There is error. This will be certified, &c.

PER CURIAM.                                    Judgment reversed.

RODMAN, J. *Dissenting.* The plaintiffs A. M. Sloan and J. H. Sloan, partners under the name of A. M. Sloan & Co., complain, that defendant purchased sundry goods of them at the price of $1,330.24, which he still owes, &c.

The defendant answers:

1. He denies that he is indebted to the plaintiffs. .

2. He bought the goods from A. M. Sloan, one of the part-ners, upon an agreement with him that the price should be credited upon a debt which A. M. Sloan then owed him for a much larger amount, and it was accordingly so credited. But he does not deny that he knew that the goods were the pro-perty of the partnership, or say that the other partner had any knowledge of the agreement between him and A. M. Sloan.

3. By way of counter-claim: that A. M. Sloan owes him by bond a much larger sum ; and he demands judgment that the said bond debt be set off *pro tanto* against the present claim, and that he recover the residue from A. M. Sloan.

The plaintiffs are presumed by the C. C. P. to take issue on the two first defences.

They demur to the counter-claim, because it is against A. M. Sloan alone, and secondly, because there is a suit now pending against A. M. Sloan in the Circuit Court of the United States for Georgia, for the same cause of action.

It was referred by consent to H. C. Jones to pass on the issues made by the demurrer. He sustained the demurrer for the first cause assigned. The Court confirmed his report and gave judgment accordingly, from which the defendant appealed.

The first and second defences make only issues of fact. The question as to the sufficiency in law of the second may still be made. It would be nearly the same with that presented by the first ground of demurrer. That question is this : Can a defendant who is sued by a partnership for a debt due to it set off against that debt one due to him by one of the partners ? And can he have judgment against that partner for any excess ? It seems to me, both on reason and authority, that he can do neither, except under special circumstances, which do not exist in this case.

It will be well to note that the two questions are not identi-cal ; nevertheless, they may be discussed together without much confusion.

1. It can never be equitable to compel one man to pay the

debt of another. Yet, if a partnership, which must always consist of more than one person, is liable to have a debt to it set off by a debt owing to a defendant by one only of its members, that may be the result, unless an account of the partnership be first taken and it be ascertained that the interest of the indebted partner in the partnership property equals or exceeds the debt which he owes to the defendant. If his interest is less than the debt, the certain result is to take the property of the other partners to pay the debt of this one.

I defer at present considering the power of a Court in such a case to require an account of the partnership and the inconvenience which would attend it. I wish now only to establish the general principle, and it must be clear, that if a defendant who owes a partnership of A & B $1,000, can extinguish his debt to the firm by setting off against it a debt of like amount from A alone, whose interest in the partnership property is merely nominal, he is making B pay A's debt without his consent.

It is not surprising that not a single authority can be found supporting any such doctrine of set off, or that numerous cases may be found expressly disaffirming it. The authorities uniformly say that to make a set off allowable, *there must be mutuality.* There is no difference in principle between cases at law and in equity on this point. When Courts of law recognized only legal rights, they allowed a set off when there wa a legal but not a real mutuality. As if one of two partners died and the survivor brought suit, a debt owing by him to the defendant was a set off at law, because the survivor was at law the sole owner of the debt to the partnership. But in equity the rule was different. Equity demanded a real mutuality, and considering the surviving partner a trustee, would not permit the assertion of a mere legal right to the prejudice of the real owners of the fund. The doctrine is well stated in Lindley on Partnership, 421, from which I extract in substance as follows: "It follows from the last proposition, that a debt owing to a firm of partners cannot (except by the con-

sent of all parties or under exceptional circumstances,) be set off against a debt owing by one of its members, or *vice versa.* It scarcely requires to be pointed out, that to allow a set off of such debts would be to enable a creditor to obtain payment of what is due to him from persons in no way indebted to him. As a rule, therefore, a debt owing by one of the members of a firm cannot be set off against a debt owing to him and his co-partners," &c.   Also on page 428:   " As regards set off in cases of partnership, it will be sufficient to show that in equity mutual debts may be set off if, in substance, they are both joint or both several, although they are not so in point of form, and that on the other hand, debts which are not both joint or both several in substance, although they are so in form, cannot be set off against each other."

The decisions in this State are numerous.   They all accord with the doctrine contended for by me.   In *Jarvis* v. *Hyer*, 4 Dev., 367, the plaintiff was a creditor of the firm of Hyer and Burdett, and issued an attachment against them, and garnisheed Danson who was a debtor to the firm of Hyer, Brimmer and Burdett.   The Court say that the sheriff under the attachment could seize only the property of Hyer and Burdett.   The creditors of the firm of Hyer, *Brimmer* and Burdett had a prior claim to payment out of the assetts of that firm.   Judgment for garnishee.   *Cook* v. *Arthur*, 11 Ired., 407, is to the same point.   *Norment* v. *Johnson*, 10 Ired., 80, was an action by the surviving partner of the firm of Alexander & Co., for a debt due the firm.   The defendant pleaded what the case called " a counter demand," consisting of a debt due her by the deceased partner for board.   She proved that Alexander was the managing partner; had boarded with her, and had agreed that she might take goods out of the store in payment of her bill; and she had accordingly purchased the goods, the price of which was sued for.   The Court held the counter demand not available, and as to the bargain with Alexander that defendant should be paid out of the store, say : " That was not sufficient to bind the other members of the firm, for it is nothing more

nor less than the case of one partner giving the guarantee of the firm for his own debt to a person who knew it to be his own debt. It has been so often held, that fact is conclusive of the bad faith of the partner, thus pledging his partners for his separate debt, and also of the bad faith or gross negligence of the person taking it, which prevents the firm from being bound, that it is only necessary to refer to one or two cases in which the doctrine has been discussed." *Cotton* v. *Evans*, 1 D. & B. Eq., 284; *Weed* v. *Richardson*, 2 D. & B., 535; *State Bank* v. *Armstrong*, 4 Dev., 519, was an action on the official bond of Armstrong as clerk brought against him and his surety. The defendants claimed to set off the sum of $930 which the plaintiff bank owed the deceased clerk. There were other points not material to be noticed, But on this point the Court say : " It is clear that the disputed credit cannot be allowed as a set off, waiving all other objections to it as such, there is a want of that mutuality between the debt demanded and the debt which the defendants opposed to it, which is indispensable under the statute of set off. A debt which is due from a plaintiff to one defendant only, cannot be set off to a joint demand against two or more defendants." To the same point is *Jones* v. *Gilbreath*, 6 Ired., 338 ; *Weed* v. *Richardson*, 2 D. & B., 535, the Court say in an action against two there cannot be judgment against both for a part of the demand, and against one of them for the residue.

In *Bunting* v. *Ricks*, 2 D. & B. Eq., 130, the sureties to the Clerk's bond of Whitfield brought suit to recover of defendant the proceeds of certain notes held by the Clerk officially which the defendant had fraudulently purchased from the Clerk. The defendant set up a counter claim against Bunting one of the plaintiffs alone. The Court say, " The demand of the plaintiffs *is joint and cannot be partitioned so as to allot a share to Bunting* by way of satisfying the part of the bond for which he may be liable as between himself and his co-security Arrington who is not a party to this suit. The counter de-

mand of Mr. Ricks is in the nature of a set off, and ought there-
fore to be between the same parties."

On this point see also *Howe* v. *Sheppard*, 2 Sumner, C. C.
R., 409, for a learned opinion of STORY, J.

In *Sellers* v. *Bryan*, 2 Dev. Eq., 358, the plaintiff as admin-
istrator of Esther and Josiah Blackman obtained a judgment
against Bryan for $6,097, and Bryan had a judgment against
the plaintiff individually for $900. The wife of the plaintiff
was a distributee of his intestate, and plaintiff sought to have
his individual debt to Bryan applied as a payment of his wife's
share of the debt by Bryan to him as administrator. The Court
first say that the two debts cannot be set off for want of mutu-
ality, and in reply to the proposition to apply the $900 to the
plaintiff's wife's distributive share, say : " This position cannot
be maintained. In the first place the plaintiff's wife is not en-
titled to a specific part of this decree, but to a share in the nett
amount of personal assets to be devided among the next of
kin. *This cannot be ascertained without an account between
the administrator and the next of kin, and that account cannot
be taken in a suit to which the next of kin are not parties.
Nor do I apprehend the Court will restrain a creditor from
the collection of his debt " until all these accounts are cleared,
in order to see what rights of set off there may be in the result."*
citing *Ex parte Twogood*, 11 *Ves.* 17.

The case of *Ex parte Twogood* was this : Agnew, one of the
partners in the banking firm of Strange, Dashwood, Agnew
and Peacock, owed Elderton $84,200. Elderton owed the firm
a larger sum. Both Agnew and the firm were in bankruptcy.
The question was whether the debt of Elderton to the firm
could be set off against Agnew's separate debt to him, or
whether Elderton could collect his debt from the separate estate
of Agnew which was supposed to be good, while the firm was
insolvent, without regard to his debt to the firm. It was argued
that an account might be taken to ascertain Agnew's share of
the indebtedness of the firm, and to the extent that might be
found to exist, the creditors of the firm might be substituted

for Elderton in his claim against the separate estate of Agnew, and the amount so received be applied to extinguish Elderton's debt to the firm.

Lord ELDON said : " Can it be said that all the affairs of the bankruptcy are to be suspended, until all the accounts are cleared in order to see what rights of set off there may be in the result ?" On a subsequent day, after consideration, he said : " I do not deny that there is a good deal of natural equity in the proposition on which this petition stands ; *but pursuing it through all its consequences, it would so disturb all the habitual arrangements in bankruptcy that I dare not do it.*"

These two cases are of great consequence and I shall advert to them again.

In none of these cases except *Sellers* v. *Bryan*, 2 Dev. Eq., 358, was it supposed that the Court could collaterally order an account between joint plaintiffs for the purpose of ascertaining whether one of them had any separate interest, to which the counter demand could apply ; and in that case the power to do so was denied.

If, as is alleged in the second plea in this case, A. M. Sloan without the knowledge of his partner agreed that his separate debt should be set off against the partnership demand, such agreement will not make the case an exception to the rule, for it was in fraud of the partner who did not know of it, and the defendant who accepted the agreement was *particeps criminis,* and it was therefore void. See the case of *Norment* v. *Johnson* above cited and also *Gordon* v. *Ellis*, 526, C. L. R., (2 C. B., 821) ; *Piercy* v. *Finney*, E. L. R., 12 Eq. R., 69, (1871.) In this last case Malins V. C. said : " Now the law is clearly settled : * * * that a person may pay a debt owing to a partnership to any one of the partners, even after its dissolution ; but it is equally clear, if any person takes a partner's bill or check for the payment of a private debt due from one of the partners with a knowledge that the bill or check or payment is made without the assent of the other partners, in a certain sense he becomes a party to the fraud on the other partners ;

and he cannot recover on the bill or check, and if he receive the money he cannot retain it." And further he says : " it is in contravention of every principle of honesty that one partner should apply assets not to pay the partnership debt, but his own individual liabilities."

2. It is said (but not in the plea of counter-claim which we are now considering, and where alone it would be pertinent) that the interest of A. M. Sloan in the partnership property exceeds the debt sued for. Of course that cannot be known to the defendant. If it were contained in the plea of counter-claim it might perhaps have been denied. But suppose it there and admitted by the demurrer. The fact alleged must be true either at the commencement of the action or at the filing of the plea. *Smoot* v. *Wright*, Conf. R. 374 ; *Haughton* v. *Leary*, 3 D. & B. 21. It is immaterial for the present argument to which of these dates the allegation would refer. I think it would be bad in either case. Let us consider how the interest of one partner in the joint property may be subjected to the payment of his separate debt. Only by execution levied on his interest, which is bound from the time of levy and seizure under execution and not before. Act 1868–'69, ch. 148, sec. 1. 1 Story Eq. Jur., sec. 677 ; *Watts* v. *Johnson*, 4 Jones, 190. Until a levy a defendant may rightfully dispose of his personal property ; and until a levy on the interest of the one partner, the partnership may rightfully continue to deal with third persons, and the partners may deal with such other. *Watts* v. *Johnson*, 4 Jones, 190. After the levy on the interest of one partner, the creditor may require a partnership account, or after a sale which dissolves the partnership, the purchaser may.

To extinguish the joint debt by allowing a set off of a separate debt against one of the partners, would be to appropriate the interest of that partner as it was at the commencement of the action, although it might have materially changed before the judgment ; it would in effect give the defendant a lien before execution, and even before a judgment. Under such a

rule no partnership could safely continue business after a plea such as that in this case, or even after the commencement of an action to recover a partnership debt, since it would be impossible to know what retrospective liens on the shares of the several partners might under this decision at any time arise.

3. No other circumstance has been pointed out to make this case an exception to the general rule.

4. Having thus seen that it is impossible to sustain the plea on any known doctrine of set off, it remains to inquire if it can be sustained under the name of counter-claim. This defence was introduced by the Code and is defined by it. It is a set off and something more. It not only extinguishes the plaintiff's claim if it equals it, but the defendant may have judgment for any excess. But the law of mutuality applies to it as strictly as it does to a set off and for the same reasons.

This law being grounded on eternal principles of equity, may be ignored or violated, but it cannot be abolished by any human power. There is nothing in the Code from which an intention to ignore or violate it can be inferred. Sec. 101 says, " The counter claim mentioned in the last section must be one existing *in favor of a defendant, and against a plaintiff between whom a several judgment might be had in the action,* and, arising out of one of the following causes of action," &c.

It seems to me that this language clearly denies a counter-claim in favor of a defendant against one of two *joint* plaintiffs. And it is clear that no action could be had on the counter-claim against the joint plaintiffs. I do not believe, that the construction now proposed has ever been put on this section in any of the numerous States, in which the Code has been adopted.

5. Section 248 of C. C. P., relates only to cases in which the demand of the plaintiff is not joint.

6. I have anticipated nearly all that I had to say as to the right of a Court to take an account of the partnership, at the instance of a creditor of one of the partners. I think no such right can exist at any time before the creditor, by a levy on the

interest of the partner, has acquired a specific lien on his share. The doctrine is novel to me, that a stranger, upon merely claiming that one of the partners owes him, can stop the partnership operations, dissolve the partnership, and in the absence of all creditors, joint or several, inquire as to the interest of that partner in the common property. And the doctrine amounts to no less than this. The case of *Sellers* v. *Bryan*, 2 Dev. Eq. 358, and that of *ex parte Twogood*, 11 Ves. 517, above cited, expressly deny this position, for reasons which must be satisfactory to all who will " pursue it to its consequences," as Lord Eldon did. The account to be of any effect, must be taken in a suit where all the creditors of the partnership, as well as all the creditors of the indebted partner, are actually or by representation, parties. A decision to the effect mentioned is a step in a new path, off from the beaten road, and where it will lead to no one can predict.

If both parties were domiciled in North Carolina, I think the account could not be taken. Still less can it be when they are domiciled in Georgia, and there can be no personal service of process. How can a Court of this State take an account of a partnership in Georgia? Will the Courts of that State pay any respect to the judgment in this? It is well settled that by an attachment by a creditor on property found in this State belonging to a foreign debtor, the Court acquires jurisdiction to the extent of that property, but no further without personal service. To that extent only will the proceeding be respected by foreign Courts. *Irby* v. *Wilson*, 1 D. & B. Eq., sec. 81; Bigelow on Estoppel, 241; *Davidson* v. *Sharpe*, 6 Ired., 14.

But it is useless to pursue this discussion further. I think the judgment below should be affirmed.

---

NOTE:—This case was decided at the last term, and was concurred in by the Chief Justice, who is absent at this term. It was held over for the dissenting opinion of Justice RODMAN.