JUNIUS DAVIS, Receiver of Bank of New Hanover, v. THE INDUS-
TRIAL MANUFACTURING COMPANY et al.

*Banks—Receivers—Insolvent Corporation—Action in Receiver's
Name—Creditors and Debtors— Set-offs—Deposits in Insolv-
ent Bank.*

1. One, to whom an insolvent bank made an assignment of its assets and who on the same day and at the suit of creditors was appointed receiver, held the assets after such adjudication, not by virtue of the deed of assignment but as an officer of the Court appointed to settle and wind up the affairs of such insolvent bank.

2. Under section 668 of *The Code* a receiver of an insolvent corporation may sue either in his own name or in the name of the corporation, and in such suit all the rights of the parties, both legal and equitable, pertaining to the matters set out in the pleadings, may be adjudicated.

3. While in the statutes relating to the winding up of the affairs of an insolvent corporation no specific directions are given as to mutual debts and credits, yet under sections 669 and 670 of *The Code*, which provide that the Court shall make such orders as justice and equity shall require and direct how claims shall be approved, the claims of an insolvent bank and its debtor, who is also a depositor, may be adjusted.

4. Debtors to an insolvent bank are those who, at the appointment of a receiver, are liable to the bank for the payment of money, whether as principal or surety or whether the liability be matured or not; and creditors are those to whom the bank is indebted at the date of the appointment of the receiver, whether the debts are due or not.

21

5. After the appointment of a receiver a creditor may assign his claim, but such assignment is subject to the receiver's right to set-off claims the bank may have against the creditor, and if the assignee of the claim is himself a debtor of the bank he cannot use the assigned claim as a set-off.

6. The effect of the insolvency of a bank closing its doors and stopping its business is to make all its deposit accounts and certificates of deposits at once become due without demand or notice, and in settling its affairs equity and justice require that the receiver shall deduct from the amount due a creditor all sums for which he is a debtor and shall allow a debtor credit for all sums for which he is creditor.

7. Where one of several indorsers of a note of an insolvent debtor to an insolvent bank is also a creditor of such bank he is entitled to avail himself of his claim in settlement of his proportionate part of his liability on such note, which will be less or greater according to the solvency or insolvency of the other indorsers.

This was a CIVIL ACTION, tried at January Term, 1893, of NEW HANOVER Superior Court, before *Brown, J.*

It was agreed that the Court find the facts, a jury trial being waived and entered of record. The Court found the following facts:

"The plaintiff is the assignee of the Bank of New Hanover, a banking corporation which did business in the city of Wilmington. Said assignment was made June 19, 1893. On same day the plaintiff was appointed receiver of said bank and of the assets of said bank so assigned to him. The plaintiff was also appointed receiver again July 12, 1892, in suit of Tate, Treasurer. Among other assets assigned to plaintiff for the purpose of paying the debts of said bank is the note sued on, a copy of which is as follows:

"$6,000. WILMINGTON,. N. C., May 23, 1892.

"Two months after date, without grace, for value received, I promise to pay to the order of the Bank of New Hanover six thousand dollars, negotiable and payable at the Bank

of New Hanover; and upon default in making such payment promise to pay interest on such sum at the rate of eight per cent. per annum during the continuance of said default.

   "(Signed)     THE INDUSTRIAL MANUFACTURING CO.

   "Said note is indorsed by said J. D. Bellamy, Jr., and each of said defendants on its back.

   "The defendants J. D. Bellamy, Jr., and Henry P. West plead set-off as follows, and the following facts are found:

   "At date of said assignment the bank was indebted to John D. Bellamy, Jr., for legal services in the sum of ten dollars. Also $112.10 on deposit in said bank to sight check. Also a certificate of deposit as follows:

"$1,150.                    BANK OF NEW HANOVER,
          "WILMINGTON, N. C., January 16, 1893.

   "John D. Bellamy, Jr., has deposited in this bank $1,150, payable to the order of himself after thirty days' notice on the return of the certificate properly indorsed, with interest at the rate of five per cent. per annum if left for three months.          .     (Signed)     W. L. SMITH,
                                      " Cashier.

   " Notice was given on this certificate June 6, 1893.

   "Said Bellamy holds a certificate entirely similar to above for $1,000, indorsed to him by Mrs. M. A. Dosher, May 22, 1893. Notice was given, and said certificate was due and payable June 23, 1893. This certificate bears on its face four per cent. interest, and dated April 29, 1893.

   " Henry P. West holds a certificate similar to the above, bearing date, four per cent. interest, payable to himself, for $1,020.26, dated May 13, 1892. No notice was given by West to the bank or to assignee Davis until thirty days

before suit commenced.   This notice was given after assignment.

"Henry P. West had also deposit in said bank at date of its assignment of $1,100, subject to check.   H. P. West does business under the firm name and style, and is sole member of the concern.

"J. D. Bellamy, Jr., testified as follows (the facts stated by him are found true and so adjudged):

"'I owned $\frac{53}{175}$ of defendant manufacturing company property.   Bates, president of bank, stated to me the note sued on must be paid.   I stated that we would arrange it.   I also stated that I did not like to have money on deposit in the bank at four per cent. interest, and be paying eight per cent.   He then agreed to allow me five per cent. on the certificate dated January 16, 1893, and changed the word 'four' to 'five.'   There was no agreement that the money I had on deposit was to be applied to payment of note sued on and no such dedication of it.   There is a thirty days' clause in the four per cent. and five per cent. certificates, but the bank never enforced the notice for many years up to May 23, 1893.   It was enforced after that.   On June 6, 1893, the cashier paid me a $1,000 certificate without exacting notice.   At the same time he declined to pay the $1,150 certificate without notice.   I requested payment of the $1,150 certificate that day.   The cashier said he could not pay it without the notice.'

"W. L. Smith, cashier of said bank, testified (the facts testified to by him are adjudged to be true):

"'The Bank of New Hanover issued four per cent. certificates of deposit (similar to one copied).   The thirty days' notice was not required, and was generally waived up to May 23, 1893.   After that it was exacted almost invariably, except as to certificates in sums of $100 and less.   I paid a $1,000 certificate to J. D. Bellamy, Jr., waiving notice after

that date, but did not pay the $1,150.    I don't recollect that it was presented.'

"It is admitted that all of said certificates were due at date this action was brought.

"In the argument defendant's counsel admits that the matters pleaded do not constitute a counter-claim, as no judgment can be rendered thereon against the plaintiff Davis.

"It is claimed that the obligations of the bank to the defendants Bellamy and West constitute a set-off against the note sued on.   No defence or set-off is pleaded by the other defendants.   They join in the plea of their co-defendants."

From the above facts the Court concluded, as a matter of law:

"1. That the certificates of deposit were not due on June 19, 1893, when note sued on was assigned to plaintiff Davis, and do not constitute a set-off against said note.

"2. That J. D. Bellamy, Jr., and Henry P. West cannot plead their individual demands against the bank as set-offs against the note sued on.

"3. That the other defendants cannot plead the set-off claimed only by their co-defendants Bellamy and West. Let judgment be entered for plaintiff."

From this judgment the defendant appealed.

*Mr. George Rountree*, for plaintiff.
*Mr. J. D. Bellamy, Jr.*, for defendant (appellant).

BURWELL, J.: The plaintiff is the receiver of a banking corporation, the insolvency of which is alleged.   Immediately before his appointment as such receiver the bank made to him a general assignment of all its property for the benefit of its creditors.   In the proceedings instituted

to effect a winding up of. its affairs, in which, as stated
above, the plaintiff was appointed receiver, it was adjudged
that that assignment was "in contravention of the laws of
North Carolina in such cases made and provided." By
that adjudication, as seems conceded, his title to the assets
as assignee was destroyed and thereafter he held them
merely in his capacity as receiver. These proceedings were
instituted and this appointment was made on June 19,
1893, in the Superior Court of New Hanover County. It
appears from the record that on July 11, 1893, the plaintiff
was again appointed receiver of the bank in a proceeding
instituted in the Superior Court of Wake County by the
Public Treasurer under the provision of chapter 155 of the
Laws of 1891, which in certain contingencies directs him
to take such action "for the purpose of winding up and
settling the affairs" of a bank incorporated by the laws of
this State.

In our consideration of the questions presented by this
appeal we will assume that the latter proceedings are in
aid of the proceedings instituted by the creditors in the
Court of New Hanover County, and that the plaintiff has
been continuously and uninterruptedly the receiver of the
Bank of New Hanover from June 19, 1893, the date of his
first appointment.

It is to be borne in mind, then, that he is not the assignee
of an insolvent, empowered to collect and distribute the
assets of his assignor according to the terms of the deed of
assignment, so far as its provisions are not inconsistent with
the law. He is an officer of the Court, appointed to "set-
tle and wind up" the affairs of the insolvent bank, and to
that end is invested *sub modo* with the title to the bank's
assets, and is authorized by statute (*The Code*, §668) to
bring suits to collect debts due to it, either in his own name
or in the name of the corporation. Prior to the enactment

of this statute and the merging of the courts of law and the courts of equity into one tribunal having jurisdiction of both legal and equitable rights, a receiver, appointed by a court of equity and holding the relation that plaintiff holds to the corporation, its assets and its debtors and creditors, could not maintain in his own name a suit on a note due to the bank and in his hands as receiver. *Battle* v. *Davis*, 66 N. C., 252. In *Gray* v. *Lewis*, 94 N. C., 392, it was decided that, as well because of the change in the system of our courts as because of the statute, the receiver might sue either in his own name or that of the insolvent corporation. In whichever name he may elect to bring the action it is essentially a suit by the corporation, prosecuted by order of the Court for the collection of the assets, and the rights of the defendant cannot be altered or destroyed by his choice to sue in his own name rather than in that of the bank. In it may be adjudicated all the rights of the bank, its creditors and the defendant debtor, both legal and equitable, pertaining to the matters set out in the pleadings, and such a judgment may be entered as will enforce the rights of the general creditors and also protect any equities that the defendants, jointly or severally, may be entitled to by reason of their being depositors in the bank as well as debtors thereto.

In the statutes of this State which relate to the winding up of the affairs of insolvent corporations there is no specific direction as to mutual debts and credits. It is said, however, that in the proceedings there shall be made such "orders, injunctions and decrees as justice and equity shall require" (*The Code*, §669), and that the Court shall direct the manner in which debts against the corporation shall be proved. *The Code*, §670. In the settlement of the estates of insolvents it is necessary that there should be some general rule by which it may be determined what is the prova-

ble debt in cases where the creditor is also a debtor to it, either as principal or surety. That rule must be such as equity and justice require, and, when made, must control the demands of the receiver in such cases as that which we now have under consideration; for, if from the claims of an insolvent creditor of the bank he shall be allowed to demand a deduction, before proof, of whatever the claiming creditor owes the bank, no matter whether as principal, or partner, or surety, or guarantor, and to allow a dividend only on the net amount after such deduction, equity and justice will require that the same principle shall be applied when, as here, the receiver seeks not to avoid the payment of an excessive dividend, but to collect a debt due to the insolvent bank, and the debtor asks that the Court's officer (the receiver) will require him to pay, not the gross sum that he owes as principal, or partner, or surety, or guarantor, but the net amount after deducting from all the demands against him of whatever nature the sum due to him from the bank.

It may be well here to note precisely who are meant by debtors and creditors of the insolvent bank, as the terms are used in this discussion of the rules of equity that should control the settlement of its affairs. By debtors to the bank are meant all those who, at the appointment of the receiver, were liable to the bank for the payment of money, whether their liability had matured or not, and without any regard to the exact nature of the liability, whether as principal or surety. The word, as here used, does not include those who become indebted to the receiver, for the same reason that a person who has become indebted to an administrator of an insolvent estate is not considered a debtor to the intestate, and allowed to set up against that debt a debt due from the deceased to him. He owes the *administrator*, while the *estate* owes him. *Pate* v. *Oliver*, 104 N. C., 458; *Roun-*

*tree* v. *Britt*, 94 N. C., 104; *Mauney* v. *Ingram*, 78 N. C., 96. Nor is it intended to include stockholders or officers of the corporation against whom the receiver may be directed to bring actions to recover sums due for subscriptions for stock, or other like claims. In all matters pertaining to set-off such indebtedness or liability as that last named is considered as due strictly to the receiver and not to the corporation.

By creditors of the bank are meant those to whom the bank was indebted at the date of the appointment of the receiver, whether the debts were then due or not. The creditor may thereafter assign his claim, but the assignee will hold it subject to the receiver's right to set-off against it claims he holds against the creditor, as stated heretofore. If the assignee of the claim is himself a debtor to the bank, he will not be allowed to use the assigned claim as a set-off. *Brown* v. *Brittain*, 84 N. C., 552.

Having thus stated what we here mean by debtors and creditors of the bank, we declare that in our opinion equity and justice require that the receiver, when he comes to make a settlement with one who is a creditor of the bank, shall deduct from his credit all those sums for which he is debtor, and when he settles with a debtor to the bank he shall allow him credit for all sums for which he is a creditor of the bank.

Applying this rule to the case now before us, we find that the defendant Henry P. West is a creditor of the bank in two accounts: First, by a deposit subject to check, and second, by a certificate of deposit bearing interest at four per cent, dated May 13, 1892, "payable to the order of himself after thirty days' notice on return of this certificate properly indorsed." To the extent of these two deposits he is a creditor. In a certain sense he may be said to be a debtor to the bank for the whole amount of the note on

which he is one of the eight indorsers. If it is true that the principal debtor, The Industrial Manufacturing Co., is wholly insolvent, and that the receiver will not be able to collect anything on this note from it, then the true debt of the defendant West to the bank is one-eighth part of the whole amount and also his proper proportion of what his co-sureties fail to pay and cannot be made by execution to pay; and we hold that the receiver should be directed to adjust and settle the said true indebtedness of the defendant West by setting off the same against his aforesaid claims against the bank.

It is to be assumed that the receiver, when an execution is issued in his favor, will direct the Sheriff in such cases as this one to seize and sell the property of the principal debtor, and not direct steps to be taken against the sureties unless necessary, and against the sureties only as is equitable and just.

In Morse on Banks and Banking, section 338, it is said: "Where the bank itself stops payment and becomes insolvent the customer may avail himself in set-off against his indebtedness to the bank of any indebtedness of the bank to himself; as, for example, the balance due him on his deposit account. So, also, even though the debt to him has not matured at the time of the insolvency. The maker or indorser of a note falling due after insolvency may set off his deposit, or a debt due him at the time of the assignment, but not a claim coming to him after the assignment." By the expression "coming to him after assignment" is meant purchased or otherwise acquired after the assignment, the principle announced being that decided by this Court in *Brown* v. *Brittain, supra.*

In the settlement of the affairs of an insolvent national bank the indorser of a note in the hands of the receiver was allowed to set off against his liability on this note his

deposits in the bank.    *Yardley* v. *Clothier*, 51 Federal Rep.,
506, overruling *Armstrong* v. *Scott*, 36 Fed. Rep., 63.    If
an indorser has this right of set-off any one or more of
several indorsers must certainly have the same right.    The
National Banking Act contains no express provision as to
set-off in cases of insolvency of a bank.    In the matter of
the Middle District Bank, 9 Cow., 414, Chancellor WAL-
WORTH said: "If the real debtor is unable to pay, and the
receiver is compelled to resort to the indorser, who is even-
tually to be the loser, he has the same equitable claim to
set off bills which he had at the time the bank stopped
payment.    But no such effect should be allowed to an
indorser where he is indemnified by the real debtor, or
where the latter can be compelled to pay."    The rule thus
stated by the learned Chancellor seems to us eminently just
and equitable.    It was applied by him to the settlement
of the affairs of a bank of issue.    The Bank of New Han-
over was not a bank of issue, but of deposit and discount.
But we know of no reason why it should not effect an
equitable result as well where the indebtedness of the
insolvent bank consists of accounts and certificates of
deposit as where its liabilities were represented by bills.
If it be said that no action would lie on the deposit which
was subject to check until after demand and refusal it is to be
replied that the same is true of an action on bills of a bank
of issue.    But we think that the effect of the insolvency of
the bank and its closing of its doors and stoppage of busi-
ness, and attempting to assign all its property to the plain-
tiff, was to make all its deposit accounts and all its certfi-
cates of deposit at once due without any demand or notice.
*Seymour* v. *Durham*, 31 Hun., 93, was an action by the
assignee of an insolvent bank against the maker of a note,
who asked that he be allowed to set off a certificate of
deposit payable to his order "on return of the certificate

properly indorsed, with interest at the rate of five per cent.,
if left four months." We adopt as pertinent here what
was said there: "The argument of the plaintiff is that
such a deposit is not due until demand; that, as no demand
has been made before the assignment, the deposit was not
then due; while the note was due, and therefore that the
deposit is not a set-off. There is no doubt of the general
principle that an action cannot be maintained for money
thus deposited until after demand. And the reason for
that is that a right of action does not arise until there has
been a breach of contract. And in cases of such a deposit
a breach of contract does not take place until a refusal of
payment. But the plaintiffs, as I think, err in arguing
that, because a demand is necessary before an action can
be brought, therefore the indebtedness is not presently
payable. The depositary may lawfully pay the debt at
any time. He could not do this if it were a debt payable
in the future. The depositor may lawfully demand the
debt at any time. He could not do this if it were a debt
payable in the future. A debt payable in the future is
one which neither the debtor has a right to pay nor the
creditor has a right to demand *instantly*. That is not the
case with such a deposit. There is no future day till which
the respective rights of the parties are postponed. The
creditor may demand payment at any time, and therefore
the deposit is a debt payable *in presenti*. Let us suppose
that Pratt (the banker) instead of making an assignment
had sued Dunham (the debtor) on the past due note. Can
it be be doubted that Dunham might have set off in such
action the deposit, producing and surrendering the certifi-
cate? Could Pratt (the banker) have objected in opposi-
tion to such a set-off that Dunham had not made a demand
for the deposited money before the day when Pratt com-
menced his action? The reply to such an objection would

DAVIS *v.* INDUSTRIAL MANUFACTURING CO.

have been that a demand was only for the depositary's protection, when called upon to pay, but that no demand was needed when the deposit was to be used only as a set-off or defence."

The fact that in one case the certificate of deposit was payable "after thirty days' notice" and not immediately after demand cannot make the language above quoted inapplicable here. But besides all this it must be considered that when a bank of deposit closes its doors and abdicates its functions, as the Bank of New Hanover did, all its deposits, whether evidenced by book accounts, or certificates such as the defendant West holds, became *eo instanti* due. Why demand that which it had thus emphatically declared it could not and would not pay? Why notify the insolvent bank that after thirty days a demand would be made? On whom should the demand be made? To whom should the notice be given? The law does not require the doing of "vain things." The failure to do them is not allowed to prevent the enforcement of just rights.

We do not think that the principle announced in *Adams v. Bank*, 113 N. C., 332, cited by plaintiff's counsel, has application here. We are not considering the lien of a bank upon the deposit of its customer, but the rights of a depositor in an insolvent bank that has stopped business to treat his deposit as due and to demand that there shall be an accounting, and that the difference between all the debits and all the credits shall be considered by the receiver, the officer of a court of equity, as the true debt due from him to the bank.

It is not necessary here to discuss the legal rules which are adopted by the Courts when the defendants in an action seek to enforce a claim which they or some of them have against the plaintiffs, or some of them, further than to say that if the Bank of New Hanover, not being insolvent and

in the hands of a receiver, had itself brought this action, we can see no reason why each one of the defendant depositors should not be allowed to set up against the claim of the bank what the bank owed him either on account or by certificate.   The objection of the bank to such an allowance of credit would seem most unreasonable and to indicate a purpose not to conduct its business as solvent banks do.   Such an objection would not be raised by a solvent banking institution.   No objection would be likely to come from the principal debtor or the other sureties.   If it did come from either the reply would be: Pay all the debt then yourselves if you do not wish to account with your co-defendant after he has paid it by surrendering his own individual bank deposit.   There would be no such multiplicity of issues raised as would make it inconvenient or impracticable to try all of them in one action.   The tendency of *The Code* practice is towards the enlargement of the number of rights that may be adjusted in one action.   *Sloan* v. *McDowell*, 71 N. C., 356.   The Court, being a court of equity as well as of law, adjusts its judgment or decree to enforce and protect all the rights of all the parties, and each right of each party, as far as they can be declared upon the pleadings, issues and verdict.   *Clark* v. *Williams*, 70 N. C., 679; *McNeill* v. *Hodges*, 105 N. C., 52.

What is said above applies also to the deposit account and the certificates of deposit set up by the defendant Bellamy.   His claim for services was due from the bank to him before its insolvency, and must be counted as a part of the set-off available to him in settlement of the claim of the bank against him.

We hold, therefore, as we have heretofore stated, that while the judgment against all the defendants for the amount of the note and costs was proper it should have been so framed as to contain a direction to the receiver to

BANK *v.* McNAIR.

allow the defendants West and Bellamy to avail themselves of their respective claims against the bank, set out in the answer, in settlement of what each of them is required to pay to satisfy this judgment. If the principal debtor is wholly insolvent and the receiver can get nothing by his execution against it, and all the co-sureties are solvent, then, as has been said, each of these defendants will be allowed to pay one-eighth part of the judgment in that way. If any one or more of the sureties are insolvent the proportion of the judgment to be adjusted ·in this way by these two depositors, West and Bellamy, will be increased. The receiver should be directed to proceed in the collection of his judgment in accordance with the principle herein announced, and to allow the set-off of the defendants West and Bellamy to the extent indicated above.

Modified and Affirmed.