Philadelphia to use v. Neill and Lincoln Savings and Trust Company, Appellant.

211 38SC

353 550

*Municipalities—Municipal contract—Contractors' bonds.*

Where the condition of a city contractor's bond is that he will "promptly pay or cause to be paid to any and all persons, any and all sum or sums of money which may be due for labor and materials furnished and supplied or performed in and about" the paving of a street named, and in a suit on the bond the testimony shows that the plaintiffs supplied the contractor with bricks which were used in paving the street named, the plaintiffs are within the protection of the bond.

In such an action the defendant cannot say that the suit is not on the bond, where the statement avers the conditions under which the bond had been given, and then avers a breach of it as a ground of the complaint,

and the bond itself, at the trial, is offered in evidence in proof of the defendant's liability to the plaintiff.

*Evidence—Promissory notes—Checks—Payment—Absolute payment—Burden of proof.*

To make a note or check payment absolute, there must be an express agreement by the creditor to receive it as such, and the burden of proving this is upon the debtor.

*Evidence—Complicated accounts—Necessity for expert—Discretion of court.*

Whether accounts are of such a complicated nature as to call for explanation by an expert accountant is a matter largely in the discretion of the trial judge.

*Trial—Reading statement and affidavit of defense to jury—Charge.*

On the trial of an action of assumpsit where there is no dispute as to the amount of plaintiff's claim, no harm is done by the trial judge in reading the statement of claim and affidavit of defense to the jury.

*Trial—Charge—Municipal bond.*

On the trial of an action on a bond of a municipal contractor no harm is done by the court in referring, simply as an illustration, to a similar suit between the same parties, and this is especially so where the facts as to this suit were developed by the party complaining in the cross-examination of a witness of the opposing party.

Argued Jan. 23, 1905.    Appeal, No. 142, Jan. T., 1904, by defendant, from judgment of C. P., No. 3, Phila. Co., June T., 1903, No. 294, on verdict for plaintiff in case of Philadelphia to use of McAvoy Vitrified Brick Company v. Aaron M. Neill and the Lincoln Savings & Trust Company.    Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Affirmed.

Assumpsit on the bond of a municipal contractor.    Before McMICHAEL, J.

At the trial counsel for plaintiff offered in evidence the bond.

Mr. Porter: I object to the admission in evidence of this paper because it has been stated by counsel that it is the foundation of his action and he has not pleaded the bond as the basis of his action.    One other objection is that this bond which is attempted to be offered is not in accordance with the terms of the ordinance of 1896.    And another ground of objection is that under the ordinance of 1885 the bond itself must be drawn in the office of the city solicitor and that has not been shown.

Objection overruled and bond admitted in evidence. Exception for defendant. [1]

A witness for defendant was asked this question:

" Q. What does your examination of those books show after deducting the note of $3,000 which has been referred to in the testimony?"

Objected to.

Mr. Porter: I offer to prove by the witness upon the stand that he is qualified as an expert accountant; that he has examined the ledger, cash book and journal of the plaintiff company in the account with Neill, one of the defendants; that the result of his examination of those accounts shows that crediting the $3,000 note spoken of, and as to which certain testimony has been adduced as to its acceptance as payment, shows that the total balance due by Neill to the plaintiff company other than upon obligations still retained by the plaintiff company amounts to $346.49.

Objected to.

The Court: I sustain the objection. I do not think expert testimony is necessary or admissible here.

Exception for defendant. [2]

The court read to the jury the statement of claim and affidavit of defense. [3, 4.]

The court charged in part as follows:

Now, gentlemen of the jury [it has been objected, first, that the statement is not a suit upon the bond of the Lincoln Savings and Trust Company. Questions of law are for the court and not for the jury, and with the question of the sufficiency of the legal pleadings you have nothing to do, your function being to determine the questions of fact which will be left to you by the court for your determination. The trial judge is of opinion that the statement of claim is sufficient.] [5] It contains in substance the allegation of facts which are sufficient to enable the plaintiff to recover from the defendant, if properly substantiated by proofs and not overcome by countervailing proofs. If the statement be inaccurate in matter of form, it should have been attacked at an earlier stage of the case, either by a rule for a more specific statement or by demurrer.

The system introduced by the ordinance of 1896 was, as is stated in the title of the ordinance, for the protection of sub-

contractors, as well as for persons furnishing materials and labor for the construction of buildings for the city of Philadelphia or for any other city work, and was to remedy an evil which had grown up, which resulted in great loss to mechanics and material men who supplied work and material to contractors for the city of Philadelphia, and also resulted in poor and skimped work for the city of Philadelphia. For, although the contractors with the city of Philadelphia were pretty sure to get their money if they completed their work according to contract, yet the subcontractors, material men and mechanics, who worked and furnished material for them, were often deprived of just payment for their work or materials, because dishonest or insolvent contractors refused or neglected to pay them, and there was no right of lien against a public work. And in the earlier suits upon bonds similar to the one given by the Lincoln Savings and Trust Company in this case, appeals were taken to the Supreme Court, and it was there settled that there was nothing ultra vires (that is, beyond the powers) or contrary to public policy in the city exacting from a contractor the condition that he should give a bond to pay subcontractors and material men. And it was further decided that where an ordinance requires a bond to be given by a ·municipal contractor to secure payment to workmen, material men and subcontractors, and the ordinance provides that " any person " who has supplied labor or material shall be furnished with a copy of the bond upon application, and that such person " shall have a right of action, and shall be authorized to bring suit in the name of the city; " each person for whose benefit the bond was given may maintain against the contractor a separate suit in the name of the city to his own use.

[And in a suit brought by the same plaintiff against the same defendants, in this same court, of the number and term immediately preceding the one on trial, an action upon a bond given by the defendants to the city of Philadelphia under the ordinance of March 30, 1896, for the protection of subcontractors and persons furnishing materials to contractors for city work, was sustained, the form of the action being similar to the present one.] [6]

These and other questions of law have been ruled by me as trial judge, in accordance, I think, with the most recent cases

in our Supreme Court, and, subject to review hereafter, you will take the law from me. But questions of fact are for the jury, and two questions of fact are for your determination in this case. [The first question of fact for you to determine is, what was the contract between the McAvoy Vitrified Brick Company and Aaron M. Neill? and the second is, were the bricks charged against Neill sold on his sole personal credit, or were they furnished and supplied to the work which Neill contracted with the city of Philadelphia to do, namely, the paving of Howarth street from Frankford avenue to Willow street?] [7]

I desire to call your attention to these two points and to the evidence which has been given in reference to them a little more distinctly. The testimony of the witnesses as to what the contract was between the McAvoy company and Neill does not seem to me to vary very much, both parties testifying, if my recollection is correct (though the ultimate recollection of testimony is always for the jury), that some time prior to the letting of the city contracts Neill went to the McAvoy company and asked for a price for vitrified bricks to be furnished in large quantities and was told the price would be $11.00 a thousand. Then bricks were furnished from time to time in large quantities, and prior to the letting of the city contracts Neill used the bricks for paving private streets, and, according to the testimony, paid for them. After the city contracts were let bricks were furnished to Neill f. o. b. the cars of the Reading Railroad at various points, and on the part of the plaintiff Mr. John C. McAvoy testified: " Mr. Neill came to our office in the fall of that year (1899) and ordered from me personally 500,000 paving brick for the paving of Wakeling, Howarth and Dyer streets. . . . He told me they were for those three streets. Those three streets were right together. The order was taken and the bricks were shipped to Frankford and used in the paving of those three streets. This one in particular, Howarth street, the brick was sent to him, and they were not paid for. . . . The brick was guaranteed to pave fifty-eight to the square yard, laid on edge as in paving." And the witness further stated: " I was on all three of those streets and I saw them paving the brick on those streets. It was my business to go on the streets at certain times."

There was also the testimony of the surveyor of the city that the amount of paving on Howarth street, including intersections, was 2660.75 square yards.

Mr. John C. McAvoy was cross-examined at considerable length, and it is for you to say whether or not his recollection is accurate, or whether he is telling the truth about it.

[As to the amount of the claim, you will have to determine that from the data given. The bricks were sold at $11.00 a thousand. The testimony of Mr. McAvoy is that there were fifty-eight to the square yard, and there were 2660.75 square yards in Howarth street.] [8]

There was other testimony which you may think was corroborative of Mr. McAvoy's direct testimony—the testimony of Mr. Neill under cross-examination, and the testimony of Mr. Thomas B. McAvoy; or you may think this testimony was contradictory of Mr. McAvoy's. These witnesses were examined and cross-examined, and it is for you to determine how far their recollection of the facts is accurate.

On the other hand, on the part of the defendant, there was an extended cross-examination of Mr. John C. McAvoy to show that the McAvoy Vitrified Brick Company has been paid, all except a small balance of some $300, for all the bricks furnished to Neill, and they claim that the books of the McAvoy company themselves and the whole testimony in the case show that nothing was due to the McAvoy Vitrified Brick Company for bricks furnished to Neill for paving Howarth street. This is a question of fact for you which you will determine from the whole evidence.

[I declined the offer of expert testimony to explain the books, because I did not think it was admissible, the accounts being not very complicated in their nature.] [9]

There is one matter, I think, however, that I should allude to, and that is whether or not the promissory notes given by Mr. Neill were accepted in full payment for their face value. This is a question of fact for you to determine, but the law is that the note, even of a third party, is collateral security, or at most, conditional payment only. To make it payment absolute, there must be an express agreement by the creditor to receive it as such, the burden of proof of which is upon the debtor. [I leave it to you, however, as a question of fact under all the

evidence to determine whether the promissory notes appearing in plaintiff's account were taken in payment or not.] [10]

[Another question of fact for you to determine is as follows : Were the bricks used in the paving of this particular street sold to the defendant Neill on his individual credit and not for the paving of this particular street, and did the use plaintiff (that is, the McAvoy Brick Company) agree to look to the defendant, Neill, for payment therefor and not bring suit on the bond given to the city upon which suit is brought in the present case? This is the defense upon which one of the defendants, the Lincoln Trust Company, largely relied. One of the conditions of the bond of the trust company was to pay for labor and materials furnished and supplied in and about said work. If the bricks were not supplied in and about Howarth street, plaintiff cannot recover. The great advantage to the city of the ordinance ought not to be frittered away, but a general balance of indebtedness or a running account between merchants is not what was contemplated by the ordinance, nor is it within the terms of the bond. You have heard the cross-examination of the witnesses and have had the books of the plaintiff before you, introduced and offered by the defendant, without objection on the part of the plaintiff. These questions of fact have been fully argued. They are, perhaps, not without difficulty, but you should determine from the whole evidence, without prejudice and without sympathy, whether the plaintiffs furnished and supplied bricks to Howarth street], [11] the paving of which was the work contracted for between Neill and the city of Philadelphia, and also whether those bricks have been paid for or have not been paid for.

Verdict and judgment for plaintiff for $2,045.50. Defendant appealed.

*Errors assigned* were [1, 2] rulings on evidence, quoting the bill of exceptions ; (3–11) above instructions, quoting them.

*William W. Porter*, for appellant.—These bricks were not "furnished for the construction of the work." They were sold to Neill, on his personal credit, entirely irrespective of any city contract, before he had such a contract, in the midst of a long running account. The sale was not on the faith of the

" penal bond: " Philadelphia v. Stewart, 201 Pa. 526; Lancaster v. Ferscoln, 203 Pa. 640; Philadelphia v. McLinden, 205 Pa. 172.

Under this act it was well settled that if the material was furnished on the credit of the contractor and not of the operation no lien would lie: Barclay v. Wainwright, 86 Pa. 191: Presby. Church v. Allison, 10 Pa. 413.

There is a fatal variance between the allegata and probata; Manufacturing Co. v. Welde, 196 Pa. 508; Ryder v. Jacobs, 182 Pa. 624–629; Noonan v. Pardee, 200 Pa. 474; Shaw v. Fleming, 174 Pa. 52.

The breach of a bond must be alleged in the statement in clear and unequivocal language: Byrne v. Hayden, 124 Pa. 170; Clements v. Dempsey, 7 Pa. Superior Ct. 52; Commonwealth v. Whitesides, 1 W. N. C. 508.

It is the general rule that where the condition of a statutory bond is harder than required by the statute, the bond is totally void and unenforceable: United States v. Tingey, 30 U. S. 115; United States v. Bradley, 35 U. S. 343; Com. v. Wistar, 142 Pa. 373.

The question whether the notes and checks were taken as payment by plaintiff, and hence the surety discharged, should not have been left to the jury: Okie v. Spencer, 2 Whart. 253; Van Horne v. Dick 151 Pa. 341; Hummelstown Brownstone Co. v. Knerr, 25 Pa. Superior Ct. 465.

Expert testimony as to the amount shown by plaintiff's books of account to be due was improperly excluded.

It was error for the trial judge to read the statement of claim and the affidavit of defense to the jury: Reese v. Hershey, 163 Pa. 253; Reel v. Martin, 12 Pa. Superior Ct. 340; Mellick v. Railroad Company, 17 Pa. Superior Ct. 12.

The learned judge erred in speaking to the jury of a former recovery, in a similar action, between the same parties: Hyslop v. Crozier, 1 Miles, 267; Hasson v. R. R. Co., 21 W. N. C. 96; Reese v. Payne, 2 Kulp, 361; Gunzenhauser v. Stephens, 8 Pa. Dist. Rep. 684; Shaeffer v. Kreitzer, 6 Binn. 430.

*Edward A. Anderson*, for appellees.—This is not a mechanic's lien and the decisions in reference to a mechanic's lien are not applicable here. The contractor does not buy, nor the

material men sell, on the credit of the street or bond. The subcontractor and material men have nothing to do with the bond. It is between the contractor and the city, taken by the city for the purpose of public policy, and it is a serious question if the subcontractor or material man could waive the benefit of its provisions if he wanted to : Philadelphia v. Neill, 206 Pa. 333.

This whole argument is but rehashing the point that was decided against the contention of the appellant in the above case : Philadelphia v. McLinden, 205 Pa. 172.

This bond has but one purpose and one condition, and that is the payment by the contractor of the debts incurred by him for labor and material under it, and the averment of nonpayment is an averment of its breach.

These notes and checks were taken as promissory notes and checks are taken ordinarily as conditional payment to be good if paid, and if not to have no effect : Phila. v. Stewart, 195 Pa. 309 ; Kilpatrick v. B. & L. Assn., 119 Pa. 30.

As to the offer of expert testimony there was absolutely no foundation for it : Ryder v. Jacobs, 182 Pa. 624.

The sixth point made by the defendants is that the trial judge read the statement and affidavit of defense to the jury. We submit no damage was done to the defendants by this course : Reese v. Hershey, 163 Pa. 253 ; Mellick v. R. R. Co., 17 Pa. Superior Ct. 12.

It is not error for the court to refer to a fact which has already been referred to by the counsel for the parties objecting to the reference : Gunzenhauser v. Stephens, 8 Pa. Dist. Rep. 684.

OPINION BY MR. JUSTICE BROWN, April 10, 1905 :

The first of the seven reasons given by counsel for appellant why this judgment should be reversed is that the bricks were sold to the contractor on his personal responsibility, and not on reliance upon his contract with the city and the bond given by him in pursuance of it. This assumes a fact not found by the jury, and which, under the evidence, they were justified in not finding. There was testimony that Neill, the contractor, called at the office of the appellees and asked for a price on vitrified paving brick, which he wished to use at a

later date in the highway department; that the price was given him and he became the successful bidder for paving a number of streets, among them Howarth street; that when he subsequently ordered the bricks he named the streets on which they were to be used, Howarth being one of them, and to this street the bricks were sent and used on it. The contractor was asked: "Q. With the brick you bought from the McAvoy Brick Company you paved Howarth street from Willow to Frankford avenue?" and the answer was, "Yes, sir." The condition of the appellant's bond was that A. M. Neill, the contractor, would "promptly pay or cause to be paid to any and all persons, any and all sum or sums of money which may be due for labor and materials furnished and supplied or performed in and about" the paving of Howarth street; and, under the testimony produced by the appellees, they can turn to the bond for protection.

Objection is next made that "there is a fatal variance between the allegata and probata"; and we are asked to say that the suit is not on the bond. We can hardly understand this, for the suit is plainly on it, and it was offered in evidence in proof of the appellant's liability to the appellees. In setting forth their cause of action on the bond, the plaintiffs properly stated the conditions under which it had been given, and then averred the breach of it as the ground of their complaint. The statement is a careful piece of pleading and its material allegations were supported by proper proofs.

By the seventeenth assignment we are asked to say that the bond is void, because it is broader than the form provided by the ordinance—so broad that it includes sub-subcontractors, and it is argued (1), that if the ordinance protects sub-subcontractors, it is void as against public policy, and (2), if the ordinance does not protect sub-subcontractors, but the bond does, then the latter is wholly void. These questions are not now before us. Neill was a contractor and the unpaid materials were furnished directly to him by the appellees. The ordinance and bond are for just such a case. Whether they protect sub-subcontractors we can only decide when that question arises. We pass upon nothing that is not before us.

Whether the notes and checks given by Neill to the appellees were taken by them as payment, in discharge of the

surety on the bond, was a question of fact for the jury. They were instructed that, to make a note payment absolute, there must be an express agreement by the creditor to receive it as such, and that the burden of proving this is upon the debtor. This was correct : Philadelphia v. Stewart, 195 Pa. 309. The president and bookkeeper of the company both testified that the notes had not been accepted as payment, and Neill, the debtor, upon whom was the burden of showing that they had been so accepted, does not testify that they or the checks were so given and received.

In the judgment of the trial judge, the accounts of the appellees with Neill were not of such a complicated nature as to call for explanation by an expert accountant. Whether a contention is such as calls for expert testimony is largely in the discretion of the trial judge : Ryder v. Jacobs, 182 Pa. 624 ; and, in the present case, it is manifest that this discretion was wisely exercised.

The evident purpose of the trial judge in reading the plaintiffs' statement and the defendant's affidavit of defense to the jury was to let them know what the issue was. In Reese v. Hershey, 163 Pa. 253, relied on by appellant in support of the third and fourth assignments, the suit was for personal injuries and the court below was criticised for reading the averment of the unliquidated damages claimed, because such reading tended " to get figures and amounts into the jury's mind without evidence." In the present case there was no dispute as to the amount of plaintiffs' claim for the material furnished. The defense was that they had been paid, and, if not, that they were not protected by the bond. No conceivable harm was done the appellant in reading to the jury what the plaintiffs claimed and what the defendant said in reply. After all the testimony had been heard by the jury they simply had reimpressed upon them by the reading of the papers the issues between the parties. It was the court's duty to do this in its charge, and, in doing so in the manner complained of, nothing in this dispute got into the jury's mind that ought not to have reached it.

That portion of the judge's charge in which he referred to the fact that these plaintiffs had recovered from the same defendants in an action on a bond given to the city of Philadel-

phia under the ordinance of March 30, 1896, must be read in connection with what preceded it. He was simply instructing the jury as to the law of the case, and they were told that there could be a recovery on such a bond as had been given in this case, an illustration being the recovery in another suit which had been sustained. But they were further told that these plaintiffs could not recover unless they found from the whole evidence that the bricks for Howarth street had been furnished by them and the same had not been paid for. Another reason why the appellant should not complain of the reference to a recovery against it in another suit, is the fact that it developed this in its own cross-examination of one of appellees' witnesses. This disposes of all the assignments. They are overruled and the judgment is affirmed.