**PIEL CONST. CO. et al. v. COMMON-
WEALTH OF PENNSYLVANIA,
to Use of HENDRICKS.**

Circuit Court of Appeals, Third Circuit.
September 25, 1929.

Rehearing Denied November 15, 1929.

No. 3984.

Harry S. Knight, of Sunbury, Pa., Maurice W. Sloan, of Philadelphia, Pa., Knight & Taggart, of Sunbury, Pa., and Sloan, White & Sloan, of Philadelphia, Pa., for appellant.

Charles C. Lark and Robert M. Fortney, both of Shamokin, Pa., and E. E. Pawling and Ulrich & Sommer, all of Selinsgrove, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The Piel Construction Company entered into a contract with the Commonwealth of Pennsylvania for the construction of a concrete highway, giving the Commonwealth its bond with the Maryland Casualty Company as surety to assure, among other things, payment for all material and labor entering into the work pursuant to Pennsylvania Acts in that regard (Act May 31, 1911, P. L. 468; Act May 16, 1921, P. L. 650 [Pa. St. Supp. 1928, § 19207]). Later, Charles G. Hendricks, trading as George R. Hendricks & Son, by contract with the Piel Company, engaged to supply the cement. Deliveries followed and payments were made by cash and notes in large sums. Then the Piel Company went into bankruptcy owing Hendricks a balance upwards of $30,000, of which $25,800 was represented by notes of the Piel Company which remained unpaid; of this sum $19,058.55 was in notes given and re-

ceived in accordance with the terms of the contract which called for payment one-half in cash and one-half in notes, and $6,741.45 was in notes which Hendricks had taken when under the contract he should have demanded and the Piel Company should have paid cash. Thereupon the Commonwealth of Pennsylvania brought this suit for the use of Hendricks against the Piel Company and the Casualty Company, contractor and surety on the bond. The plaintiff had a verdict for $34,095.80 and from the judgment entered thereon the Casualty Company appealed.

As the appellant has in its brief compressed its forty assignments of error into four general specifications of error and has confined its discussion to them, we shall pursue the same course.

■ The first error thus pointed out relates to the terms of payment contained in the Piel-Hendricks contract for cement. These are:

"Terms of Payment: One-half in cash; balance in notes to bear interest at rate of 6 %; 10¢ per barrel discount on cash payments; 5¢ per barrel discount on note payments."

The Casualty Company contended, and still maintains, that this provision of the contract covered the entire agreement of the parties in respect to payment; was complete within itself and imported a legal obligation to be construed by the court and not to be varied by parol evidence; that, properly construed, the terms providing payment by notes meant full and absolute payment whether the notes were paid or protested; and that when Hendricks took the notes in payment of one-half of the contract price, he was paid in full and thereby the surety was discharged from liability under its bond to the Commonwealth to pay him as a sub-contractor for material.

■ The court refused so to construe this provision of the contract as matter of law because of an unvarying line of Pennsylvania decisions, directly ruling this Pennsylvania contract, to the effect that a note, whether of a third party or an acting party, given, or agreed to be given, by one and accepted by the other is, in the absence of special agreement to the contrary, not absolute but merely conditional payment, defeasible on the dishonor or non-payment of the ·note, in which event—the debt not being extinguished—the debtor remains liable for his original debt. Mechanics' National Bank v. Kielkopf, 22 Pa. Super. Ct. 128; Shepherd v. Busch, 154 Pa. ·149, 152, 26 A. 363, 35 Am. St. Rep. 815; Holmes v. Briggs,

131 Pa. 233, 18 A. 928, 17 Am. St. Rep. 804; Philadelphia v. Stewart, 195 Pa. 309, 314, 45 A. 1056. So fixed has this rule become in Pennsylvania that the giving of a note, or a provision in a contract for payment by notes, has arisen to a presumption in law that settlement in this manner is only conditional payment, League v. Waring & Co., 85 Pa. 244, to be overcome, of course, by evidence of an express agreement between the parties that a note given and accepted shall constitute complete payment. When thus rebutted the question becomes one of fact for the jury, and the burden of showing the intention to make payment by note absolute is upon the party alleging such intention. Mechanics' National Bank v. Kielkopf, 22 Pa. Super. Ct. 128; Philadelphia v. Neil & Lincoln Savings & Trust Co., 211 Pa. 353, 362, 60 A. 1033. We have not found any evidence offered by the Casualty Company, which alleged such intention, to sustain this burden in respect to the provision of the contract here involved. If there was such evidence the jury had it and has passed upon it. But there was evidence, introduced by Hendricks, of a parol contemporaneous agreement to the effect that the notes called for by the "terms of payment" of the contract were to be given by the Piel Company and accepted by Hendricks as conditional payment only and not to be considered as actual payment for materials until the notes were actually paid. The Casualty Company insistently charges error in the admission of this evidence because it says it was admitted to contradict the terms of the written agreement, violative of the rule in that regard.

While the evidence of the parol agreement did contradict the Casualty Company's construction of the terms of the written contract it did not, and, indeed, could not, contradict the terms of the written contract clothed as they were with the presumption of law that the parties intended conditional payment. As the parol agreement was in precise accord with the presumption, the two agreements were in legal effect identical. We regard the admission of this evidence, if technical error because uselessly admitted, clearly not prejudicial, for it did nothing more than support the presumption which the law already accorded the written agreement.

■ To the same matter the Casualty Company directs the second general specification of error. It maintains that not only was the parol contemporaneous agreement introduced and admitted to contradict the written contract but that it was offered to show

it was the thing that induced Hendricks to sign the written contract and that, being admitted for that purpose, the learned trial judge used it for a different purpose, that of justifying its admission on the ground that it was received merely in corroboration and support of the stated presumption of law, contrary to the general rule that evidence offered and admitted for a limited purpose must be confined to that purpose and not be used for any other. Fair Haven & W. Railroad v. City of New Haven, 77 Conn. 667, 60 A. 651; Emory v. Owings, 3 Md. 178; Benner v. Hauser, 11 Serg. & R. 352, 355; 23 Corpus Juris, 56. The record, as we read it, discloses that the parol agreement was introduced for the purpose of establishing the fact that the notes were neither given nor taken as absolute payment. The matter of inducement came out incidentally. We can find nothing in the record which expressly or implicitly limited its uses. In any event the rule does not apply to this evidence for, whatever its purpose, its admission was useless, and harmless to the Casualty Company. If the verdict had been the other way, the court's instructions to the jury that they must find that the parol agreement induced Hendricks to enter into the written contract, and that the agreement must be proved by evidence that is "clear, precise and indubitable" instead of by the preponderance of the evidence—instructions strongly against Hendricks—might, it can readily be imagined, have been prejudicial to him.

The Casualty Company by its third general specification charges error to the court in admitting testimony of an officer of the Department of Highways which proved that a certain sum had been paid by the Commonwealth of Pennsylvania to the Casualty Company in settlement of the Piel matter. Standing alone and unexplained, this looks irrelevant though not necessarily prejudicial, but we agree with the learned trial judge that this proof of settlement between the contractor and the Commonwealth was necessary for the Commonwealth to recover on the bond for Hendricks' use, particularly under the pleadings.

Returning to the statement of facts at the opening of this opinion it will be noted that Hendricks not only accepted Piel notes in settlement for one-half of his running account as he was bound to do by the "terms of payment" but in addition he accepted from the Piel Company notes aggregating $6,741.45 in settlement of a part of the other half of the account when the "terms of pay-ment" required settlement for that amount in cash. The Casualty Company by its fourth general specification of error says that it was discharged from its whole obligation under the bond because Hendricks varied the terms of his contract with the Piel Company by accepting notes for more than one-half of its indebtedness and by not insisting upon payment in cash of the remainder due under the other one-half as stipulated in the contract.

The question concerns familiar law that a material change in the performance of an assured contract which would relieve a personal surety, not having consented, will not relieve a commercial surety unless it show that it was injured by the change. For this general proposition Hendricks cites and relies on Philadelphia v. Fidelity & Deposit Co., 231 Pa. 208, 80 A. 62, Ann. Cas. 1912B, 1085, and the Casualty Company relies on American Bonding Co. v. United States (C. C. A.) 233 F. 364, 370. The main difference in these cases is in the facts. Each decision is equally controlling on its own facts and, though differently expressed, neither opposes the other in the statement and application of the law. In the Pennsylvania case the change from the assured contract was an extension of time for payment of a debt before it came due. The court held that as the surety company there had neither averred nor proved that it had been injured by the extension but having merely relied upon a presumption of injury, it should not be relieved of liability.

In the American Bonding Company Case, decided by this court on appeal, the change was in the method of payment. The contract called for cash; the sub-contractor accepted notes without the knowledge or consent of its surety. Judge McPherson, delivering the opinion, brought out the vital difference between the liability of a surety on a contractor's bond to pay for material, which usually is entered into before the principal contractor agrees with his sub-contractors and which is therefore uncertain, and its liability when later the uncertainty is removed by the definite and certain terms of a sub-contract. When the contractor and sub-contractor have agreed upon terms, the surety's roving liability is halted and thereby fixed and its right to avoid liability in a sub-contractor's suit on the bond for material or labor depends upon proof of a material change in performance made without its consent, when the surety is an individual, and, when the surety is an assurance corporation, upon additional proof that it has suffered harm

from the change. The learned judge graphically stated the distinction thus: "A corporate surety * * * is much like the signer of a blank check. Undoubtedly such a man takes a risk; if a larger sum should be inserted than he intended, he must usually accept the situation; but, after the blank has been filled, his liability is fixed, and is not subject to injurious change thereafter." Applying this law to the facts of this case our inquiry is whether the Casualty Company was injured by Hendricks' departure from the terms of the contract with the Piel Company in accepting its notes for more than one-half of his account. This question, we think, is divided in the same way that the sum of the notes received ($25,800) is divided, namely, by those notes which represent the one-half which the contract required to be paid by notes ($19,058.55) and by those notes which were taken in lieu of cash when payment in cash was required by the contract ($6,741.45). When Hendricks accepted notes for one-half of his account, he did only what the contract required him to do. Indeed, there was nothing else for him to do. When he accepted notes instead of cash for a part of the other half, that act had no bearing on either the fact or the legal effect of his acceptance of notes for the first one-half. Why, then, should his acceptance of the excess notes discharge the surety from liability to pay the defaulted notes for that one-half which the contract called for? Was the surety harmed thereby? These questions the Casualty Company has not answered satisfactorily. We hold that Hendricks' acceptance of notes in the amount of $6,741.45 instead of a demand on his part for cash as the contract called for did not discharge the surety from liability on the notes he had properly taken—indeed, was compelled to take—under the terms of the contract.

When, however, Hendricks accepted $6,741.45 of notes in lieu of cash, he departed from the contract. It is not worth while to discuss the proposition that such a course of dealing materially changed the terms of payment originally agreed upon and assured in so far as they related to that sum. The only matter to discuss is whether the Casualty Company produced evidence that it was injured thereby. It could not stand on presumptions.

Evidently the learned trial judge thought there was such evidence because he submitted the question to the jury as one of fact. In the case at hand, as in the American Bonding Company Case, it would seem that the injury was self-evident. But the proofs show that by accepting notes instead of cash Hendricks extended the payment of his claims against the Piel Company from a time when it was at work and must have had some funds until after it had become insolvent and been put into bankruptcy. When the notes came due there was no cash with which to pay them, and the proofs show rather poignantly that by the suit at bar (now in judgment) calling upon the Casualty Company for indemnity because of their non-payment, the Casualty Company had suffered substantially by their acceptance. Moreover, if Hendricks had stuck to the contract method of payment, these notes would not have been given and naturally the Piel Company would not have defaulted in their payment and no demand would have been made upon the Casualty Company for indemnity. What would have happened if Hendricks had demanded cash, no one can tell and the Casualty Company is not required to prove. While there was enough evidence for the jury to have found that the Casualty Company was injured by the material change in the performance of the contract with respect to this smaller sum of money, there was no evidence that we can find proving it was not injured. There was, in consequence, no conflict of evidence on the question and, as it turned out, no evidence to support that part of the jury's verdict which embraced the $6,741.45.

We are of opinion that the court fell into error when it refused to direct a verdict for this amount by charging the defendant's second request.

The judgment will be affirmed if the use-plaintiff will file a remittitur for $6,741.45 and interest in the proportion which that amount bears to the amount of the judgment. Otherwise the judgment will be reversed and a new trial awarded.