Opinion by
 

 Dithrich, J.,
 

 Plaintiff appellee sued in assumpsit on a written contract of employment. He had an employment contract as controller with defendant appellants, partners trading as Rankin Coal Company. He was employed October 14, 194Y, “for and during the balance of the
 
 term
 
 of the partnership,” which was to end and be fully terminated on December 31, 1951. (Emphasis added.)
 

 The partnership was dissolved as of J une 1,1948, for the purpose of forming a corporation, and appellee was discharged as of that date. He contends that his discharge was in violation of his contract of employment which could not be terminated, except for cause, prior to December 31, 1951.
 

 It is appellants’ contention that appellee was to be employed as controller only so long as the partnership should be in existence. They averred, as an additional defense, that he did not keep proper records and fre
 
 *191
 
 quently denied the partners the right to inspect the books and records at reasonable times.
 

 The jury found for appellee and from the refusal of their motions for judgment n. o. v. and a new trial appellants have brought this appeal.
 

 The long-established applicable law is clearly set forth in
 
 Fereira v. Sayres,
 
 5 W. & S. 210, and
 
 Johnson v. Judge,
 
 16 Pa. Superior Ct. 137. Each of those cases involved the dissolution of a partnership by the death of a partner, and in each it was held that such dissolution would not terminate a contract of employment of an agent previously made for a fixed term. The analogy between a partnership which is dissolved by the death of a partner, reformed, and the business carried on by the surviving or additional partners, and a partnership which is dissolved for the purpose of forming a corporation to carry on the same business appears to our minds to be abundantly clear and controlling.
 

 Appellants, however, attempt to distinguish their case from the ruling cases on the ground that here the hiring was “for the balance of the
 
 duration
 
 of the partnership,” notwithstanding the clear and unambiguous language of the contract that it was “for and during the balance of the
 
 term
 
 of the partnership.” (Emphasis added.)
 

 The partnership agreement specifically provided “That the
 
 term
 
 of the partnership shall begin as of January 1, 1947, and shall end and be fully terminated on December 31, 1951, being for a
 
 full term
 
 of five (5) years from the date of January 1, 1947.” (Emphasis added.) The motion for judgment n. o. v. was properly refused.
 

 Several reasons were assigned in support of the new trial motion, but on appeal all had been abandoned save one. That one is that it was error to refuse to admit into evidence the records of the employe when the de
 
 *192
 
 fense was that he did not keep proper records. But it appears from the record that the error was more serious than that.
 

 Notwithstanding the fact that the records and the offer of expert testimony to show that they were not properly kept had been excluded, the learned court charged the jury that: “The evidence under that issue [that he did not keep proper records], and it is the only issue raised in this case, has been submitted to this jury; and we submit to you whether or not the plaintiff failed to keep proper books, whether he failed to show the records, vouchers and papers to the partners, and whether they criticized him for his work. We say to you that if you find as a fact that the plaintiff did not keep proper records, or that he failed to show the records to the partners, then that might have been a breach of his contract.” And again further on the court charged: “If you find as a fact that he did not keep proper records, that he refused to show the records and papers to the members of the partnership, then that might constitute a breach of the contract which would be a defense in this case. That is the only issue of fact which we submit to you as a defense in this case.”
 

 In refusing the motion the court said: “The evidence which was relevant to the issue was submitted to the jury and supports their verdict.” That statement is only partly correct. Not
 
 all
 
 of the “evidence . . . relevant to the issue was [properly] submitted to the jury.” The court could not submit to the jury “whether or not the plaintiff failed to keep proper books” when the only evidence submitted bore solely on the question “whether he failed to show the records, vouchers and papers to the partners, and whether they criticized him for his work.” Whether they criticized him or not, they were defending on the ground that the records were not properly kept, and the jury could not properly pass on the
 
 *193
 
 question submitted to them without having the records before them for examination.
 

 In explanation of his action, and in an effort to justify it, the learned trial judge said: “These exhibits were offered for a twofold purpose: First, for the alleged purpose of proving that the plaintiff failed to keep proper records; and second, for the purpose of having-two expert accountants express their opinions, based on said exhibits, that the plaintiff did not keep proper records as Controller of the defendants’ business . . . The admission of these exhibits in evidence would needlessly have encumbered the record with much irrelevant and immaterial matters, . . . These exhibits, in themselves, had no intrinsic evidential value, and could not have aided the jury in the determination of the issue on trial before them.” The court then cited
 
 Ryder v. Jacobs,
 
 182 Pa. 624, 38 A. 471, and
 
 Philadelphia v. Neill,
 
 211 Pa. 353, 60 A. 1033, as authority for excluding both the records and the expert testimony. But in each of those cases the trial judge, in the exercise of his discretion, excluded the testimony of expert accountant-witnesses for the perfectly valid reason that the records
 
 lohich were in evidence
 
 were simple and spoke for themselves. In the instant case, however, the records
 
 were not in
 
 evidence, thereby making it impossible to determine whether expert testimony should be admitted for the purpose of explaining them. The condition of the records was the real question at issue. As stated in Wigmore on Evidence (3d Ed.) §1151, vol. IY, page 240: “. . . where the existence or the external quality or condition of a material object is in issue or is relevant to the issue,
 
 the inspection of the thing
 
 itself,
 
 produced before the tribunal, is ahoays proper
 
 ...”
 

 The fifth assignment of error is sustained, the judgment is reversed, and a new trial awarded.