In August, 1901, the plaintiff bought by sample from defendants 118 bales of cotton, and in September the defendants delivered 40 bales thereof and drew a draft on the plaintiff with bill of lading attached for $574.48, which draft the plaintiff paid. The plaintiff alleged that the 40 bales did not come up to sample, and claimed damages in the sum of $285.92. The defendants are nonresidents, residing in Vicksburg, Mississippi. On 21 September the defendants shipped 50 bales of the lot of 118 bales, drawing draft with bill of lading attached for the contract price, $836.26. The draft was drawn on the Morehead Banking Company, Durham, N.C. "account of Willard Mfg. Co.," "W., 50 bales pickings, bill lading attached," and indorsed to the Merchants National Bank of Vicksburg. The plaintiff refused to pay the draft and attached the cotton as the property of the defendants Tierney Co. upon the claim for damages alleged to have been sustained by reason (632) of the failure of the 40 bales to come up to sample. The Merchants National Bank intervened, claiming title to the property, and gave the undertaking required by statute. The cotton was thereupon delivered to said bank. The defendants Tierney Co. filed no answer. His Honor submitted the following issues to the jury:
1. "Was the Merchants National Bank the purchaser for value of the draft for $836.26 and the bill of lading attached thereto covering the shipment of the 50 bales of cotton?" Answer: "No."
2. "Was the Merchants National Bank the purchaser for value of the draft for $574.48 and bill of lading attached thereto covering the shipment of the 40 bales of cotton? Answer: "No."
3. "What was the value of the lot of 50 bales of cotton at the time it was seized in this action?" Answer: "$398.85." *Page 486 
4. "What damage, if any, has the plaintiff sustained by reason of the cause of action set out in the complaint?" Answer: "$285.92, with interest from 27 September, 1901."
5. "Was the cotton attached by the plaintiff the property of the Merchants National Bank at the time of levying the attachment?" Answer: "No."
The interpleader bank objected to the first, second, third, and fourth issues; objection overruled, and the bank excepted.
The plaintiff introduced A. G. Cox, superintendent of the plaintiff company, who testified to the condition of the 40 bales of cotton and the amount of damage sustained thereby.
The interpleader bank introduced the deposition of W. S. Jones, cashier, who testified that the defendants had purchased from Metzger Bros. of Mobile the 50 bales of cotton in controversy, and they drew upon the defendants at Vicksburg for the price, $697.99; that (633) the interpleader bank advanced or loaned to the defendants the amount of the draft, and they were charged therewith on the books of the bank; that on 23 September, 1901, the defendants drew the draft for $836, as aforesaid. "This draft was discounted by the bank, and the proceeds, less discount, were credited to the defendants on the books of the bank on 28 September. The bank discounted or purchased this draft in pursuance of a contract with the defendants that they should deliver to the bank the bill of lading taken out by Metzger Bros. for said cotton, at Birmingham, Ala., by which said cotton was to be delivered to the order of Metzger Bros. by the Southern Railway Company at Willardsville, N.C. This bill of lading had been attached to the draft drawn by Metzger Bros. on the defendants and had been indorsed by them. Upon the payment of the draft the bill of lading had been delivered to the defendants, and in pursuance of said contract it was also indorsed by them and was attached to the draft drawn by them, as above stated. The draft with the bill of lading attached was forwarded to the Morehead Banking Company at Durham, and, upon payment of the same being refused, the draft and bill of lading were returned to the Merchants National Bank, the interpleader.
The amount paid by the bank in the purchase of this draft has never been repaid by the defendants. Metzger Bros., upon being advised that the Willard Manufacturing Company refused to pay the draft and take the cotton, because they alleged that it was defective, agreed that if the cotton was returned to them at Birmingham, free of any charges for freight, they would refund any amount that had been paid to them for the cotton by the defendants. *Page 487 
Thereupon the sale to the defendants, whose right had been acquired by the interpleader bank, was rescinded and the cotton returned to Metzger Bros. at Birmingham, and they returned to the interpleader bank $697.99, which was the sum that had been paid to them for (634) this cotton by the defendants. The transaction between the bank and the defendants was bona fide, by which the bank paid to Tierney Co. the sum of $830, being the amount of the draft, less discount, upon the delivery to them of the bill of lading, by which the bank became the sole and absolute owner of the draft and bill of lading. The witness was shown the draft for $574.48, dated 11 September, 1901, and he stated that the bank had held the same. He also stated that the interpleader bank discounted this draft and placed the proceeds, $571.48, to the credit of the defendants. The bill of lading was attached to the draft.
To the question, "How much money did your bank advance to Tierney Co. for the draft of $836.26?" the witness responded, $830." To the further question, "Did not your bank reserve the right to charge back against Tierney's account with your bank the amount you advanced or paid to him for said draft of $836.26?" he responded, "There was no such reservation; being indorsers of the debt, the defendants made themselves liable in case it was not paid; further than to require their indorsement, nothing was said." He testified that the bank had delivered the cotton to Metzger Bros. and received from them $697.99, less freight charges. The interpleader bank appealed from the judgment.
We think that the exception to his Honor's ruling in submitting the second issue in regard to the draft of $574.48 should be sustained. The question raised by the interplea on the part of the bank is correctly stated in the fifth (635) issue, to wit: "Was the cotton attached by the plaintiff the property of the Merchants National Bank at the time of levying the attachment?" Its ownership of the draft for $574.48 was entirely immaterial, and the submission of an issue in regard to it was calculated to prejudice the interpleader. His Honor, so far as the record shows, gave the jury no instruction in regard to the law by which they were to be guided in responding to this issue. The interpleader bank requested his Honor to charge the jury that if they believed the evidence to answer the first issue "Yes." We think that this instruction should have been given. It is true, as said by his Honor, that the burden of establishing its title to *Page 488 
the cotton was upon the interpleader. Wallace v. Robeson, 100 N.C. 206. When, however, it introduced the draft with the bill of lading attached, and showed by the evidence of the cashier that it was in the possession of the bank, with an unrestricted indorsement, the presumption arose that it was a purchaser for value without notice of any defenses or equities of the drawee or consignee. Pugh v. Grant, 86 N.C. 39; Bank v. Burgwyn,108 N.C. 62, 23 Am. St., 49. There was no suggestion of any fraud in the inception or the indorsement of the draft. The draft was indorsed to the bank, and the proceeds, less the discount, passed to the credit of the defendants. There was no agreement that the amount was to be charged back if the draft was not paid. "Further than to require their indorsement, nothing was said."
As we understand the evidence, the bank advanced to the defendants $697.99 with which to pay for this identical cotton, paying Metzger Bros.' draft, with bill of lading attached, for that amount. As a part of the transaction the same bill of lading accompanying this draft was attached to the draft for $836.26, drawn by the defendants to their own order and indorsed to the interpleader bank. In other words, the (636) defendants owed the bank $697.99, money advanced to pay for the cotton, and the proceeds of the draft in controversy were credited to them in discharge thereof, leaving a balance of $132.10 to the credit of the defendants, which was afterwards drawn out. This is the real transaction, stripped of the mysteries of bookkeeping, which are always open to explanation. Why, then, was the bank not the owner of the draft and the cotton upon account of which it was drawn, at least to the amount advanced therefor?
It is well settled that when the vendor of goods ships them, taking from the carrier a bill of lading to deliver to his own order, and thereupon draws a draft payable to his own order upon the vendee, attaching the bill of lading, and indorses to a third party such draft for value, the title to the goods vests in the indorsee at least to the extent of the amount advanced. Daniel on Neg. Instruments, sec. 1734 (a). The law is thus stated and cited with approval by Mr. Daniel: "When the vendor of goods consigns them to the purchaser for the price and delivers the bill carrier and, intending to resume the right of control over them, at the same time draws upon the purchaser for the price and delivers the bill of exchange, with the bill of lading attached, to an indorsee for a valuable consideration, the consignee, upon receipt of the goods, takes them subject to the right of the holder of the bill of lading to demand payment of the bill of exchange, and cannot retain the price of the goods on account of a debt due to him from the consignor." Emery v. Bank, 25 Ohio St. 360; 18 Am. Rep., 299; Bows v. Bank, 91 U.S. 618. This *Page 489 
Court in Finch v. Gregg, 126 N.C. 176, 49 L.R.A., 679, recognized this almost elementary principle, carrying it to its fullest extent. It appeared that Gregg had shipped to certain persons a lot of corn and drew a draft on them with the bill of lading attached. The bill of exchange was indorsed to "The Seymour Danne Company." Clark, J., said: "When the bill of lading, payable to order of shipper, was assigned by him for value (i. e., cashing the draft upon purchaser, (637) attached) to the Seymour Danne Company, the latter became the owners of the corn as against all the world, except the shippers, as to whom the assignment was a security for the amount of the draft." In that case a second lot of corn was shipped by Gregg to other persons and a draft with bill of lading drawn and indorsed to the same parties. When this second lot of corn reached its destination the parties to whom the first corn was shipped attached it as the property of Gregg, on account of a claim for damages sustained in the purchase of the first lot. The Seymour Danne Company came in and made themselves party defendant, and, upon showing themselves to be the purchasers of the draft, this Court held that while the corn attached was thereby the property of the Seymour Danne Company, the action should be dismissed as to Gregg, but permitted a recovery against the indorsees upon the principle that by the indorsement of the first draft with the bill of lading attached they became the real vendors and were liable for damages sustained by reason of a defect in quality of the first car-load of corn. The court said: "It is true, the action was originally against Gregg alone, which could not be sustained, as no jurisdiction as to him was obtained by attaching the two carloads of grain, which by the assignment of the bills of lading had become the property of the Seymour Danne Company." In this case the bank only interpleads and does not make itself a party to the action.
The plaintiff relies upon Packing Co. v. Davis, 118 N.C. 548. There the question arose between the owner of a draft, which had gone to protest, and the receiver of an insolvent bank. The facts were found by the court, showing a course of dealing between the bank and its customers, and the Court said: "In the present case it is found that the tacit agreement between the parties, from their course of dealing, (638) was that though the amount was credited to the depositor and he could draw against it, yet if the paper so deposited was not paid on presentation, the amount thereof was to be charged up to the depositor's account or taken off his next deposit ticket. This stamps the transaction as being unmistakably a bailment for collection. As nothing had passed, the fact that the bank had simply given the depositor credit on its books would not make the bank a purchaser for value." The plaintiff had *Page 490 
never drawn the amount of the draft, but had at the time of the failure of the bank a large balance to its credit. The Court, Clark, J., in concluding the opinion, citing In re Bank (Minn.), 45 Am. St., 454, says: "Of course, in all such cases the banker, like a factor, has a lien for advances made on the faith of the paper, and consequently the claim of the creditor may be modified by the state of his account."
In Bank v. McNair, 114 N.C. 335, it appeared that the defendants executed their note to the First National Bank of Wilmington for $5,000, and that this note before maturity, with others amounting to $17,000, was discounted by the plaintiff bank and the proceeds credited to the Wilmington bank. About one-half of the proceeds of the lot of notes was paid out upon checks of the Wilmington bank. The Wilmington bank failed, the defendants having to their credit at said bank something over $4,100. This Court held that this transaction constituted the plaintiff bank a purchaser for value, saying: "It is true, if nothing had passed and the plaintiff had simply given the payee credit on its books, this would not have made the plaintiff a purchaser for value."
In Cotton Mills v. Weil, 129 N.C. 452, the facts as stated by Clark,J., are: "When the shipment of 50 bales was made, Weil Bros. drew on the consignee, the plaintiff, the bill of lading attached to the (639) draft, for the value of the cotton in favor of the bank. The bank did not cash the draft, nor did it accept the same in settlement of Weil Bros.' indebtedness or any part thereof, but simply credited them with the amount of the draft, with the right on the part of the bank to charge it back to Weil Bros. in case the draft was returned not collected, and the bank sent the draft with the bill of lading attached to its representative in Baltimore, with `Collection' stamped on its face. When payment was refused by the drawee and the draft returned, it was chargedback against Weil Bros. No money was passed, nor did Weil Bros. draw against the amount credited, nor could the bank officers remember whether they returned the draft and bill of lading to Weil Bros. after it was returned to them. The bank intervened upon the request of Weil Bros. and for their benefit." The court correctly held that the bank did not become the owner of the draft or cotton. In Boykin v. Bank, 118 N.C. 566, the indorsement was "For Collection."
The facts in these cases distinguish them from this record. We cannot see how the fact that the defendants indorsed the bill of exchange prevented the bank being a purchaser for value. This was no more than additional security for its payment and in no manner affected the title to the cotton. Nor can we see how the testimony of S. A. Ashe that the indorsement "had been changed by making it a special indorsement" could affect the question involved in the issue. A blank indorsement *Page 491 
may at any time be filled in to show who is the true owner of the bill. Daniel on Negotiable Instruments, sec. 694. The holder of a bill or note, indorsed in blank, may write over the indorsement any contract not inconsistent with the undertaking of the parties or the original contract. . . . In like manner, he may write over the blank indorsement in full to himself or any other person. 4 A. E., 268, where the authorities are collected. We do not find any evidence tending to (640) show that the draft was received for collection.
New trial.
CLARK, C. J., did not sit on the hearing of this case.
Cited: Mason v. Cotton Co., 148 N.C. 498; S. c., ib., 517; Roberts v.Hudson, 150 N.C. 211; Latham v. Sprague, 162 N.C. 406; McKeel v.Holloman, 163 N.C. 135; Forbis v. Lumber Co., 165 N.C. 406; Moon v.Simpson, 170 N.C. 336; Worth Co. v. Feed Co., 172 N.C. 342; Lindsey v.Mitchell, 174 N.C. 460; Moon v. Milling Co., 176 N.C. 410.