STANDARD TRUST CO. OF NEW YORK et al. v. COMMERCIAL NAT. BANK et al.

(Circuit Court of Appeals, Fourth Circuit.   March 8, 1917.)

No. 1466.

1. BANKS AND BANKING ⬤⟿281—NATIONAL BANK—LIQUIDATION—EFFECT.
    Liquidation by a national bank under Rev. St. §§ 5220, 5221 (Comp. St. 1913, §§ 9806, 9808), does not terminate the existence of the bank as a legal entity which can sue and be sued, and therefore an action against it is not barred within three years after liquidation by Revisal N. C. 1905, § 1200, limiting the right to sue a corporation to three years after its dissolution.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1075–1079.]

2. BILLS AND NOTES ⬤⟿356—HOLDERS FOR VALUE—DEPOSIT—NATURE—RIGHT OF BANK.
    A bank credited to the account of its depositor a check drawn on another bank and permitted the depositor to draw out the full amount thereof. The check was dishonored by the drawee bank for want of funds and returned to the first bank, which charged the amount against its depositor's account. At that time the account according to the books of the bank was sufficient to meet the check, but it in fact consisted only of credits given for the deposit of other checks which thereafter proved not to be good. Held, that the bank was not merely a holder for collection, but a holder for value, so that it could sue thereon under Revisal N. C. 1905, § 2206, free from defenses available to prior parties.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 908.]

3. BANKS AND BANKING ⬤⟿175(4)—PAYMENT OF CHECKS—BREACH OF DUTY—LIABILITY.
    In an action against a bank for damages caused by its breach of duty as agent to collect a check drawn upon it which there were sufficient funds to meet, prima facie proof that the check reached the town in which the bank was located on Friday evening justifies an inference that it came into the hands of the bank next morning so as to be entitled to payment in preference to other checks presented and paid on Monday and which the bank claimed were presented before the check in controversy, and it was error to direct a verdict for defendant at the close of plaintiff's evidence.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 599, 647, 648.]

4. TRIAL ⬤⟿139(1)—TAKING CASE FROM JURY—AVERMENTS IN PLEADINGS.
    Where plaintiff's evidence creates a presumption entitling it to recover, an averment in the answer denying the presumed facts does not justify taking the case from the jury.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341.]

5. BANKS AND BANKING ⬤⟿156, 175(3)—LIABILITY OF BANK—ACCEPTANCE FOR COLLECTION.
    Where a bank to which a check drawn against it had been sent dishonored the check and had it protested, there was sufficient evidence that it had accepted the check for collection, and the bank cannot deny that it had thereby made itself the holder's agent.
    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 539–546, 640–646.]

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TRIAL ⬡⟿143—DIRECTED VERDICT—PRESUMPTION.

Where plaintiff's evidence warranted a presumption which entitled it to recover, evidence by defendant contradicting the presumption does not entitle defendant to a directed verdict, but merely raises an issue for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343.]

7. BANKS AND BANKING ⬡⟿175(4)—ACTIONS—FAILURE TO PAY CHECK—QUESTION FOR JURY.

In an action against a bank for its breach of duty as an agent to collect a check drawn upon it, where the bank answered that it had first paid other checks which exhausted the account, the circumstances attending the payment might raise a question for the jury as to whether the bank had discharged its duty toward the holder of the check in suit, even if the other checks were presented at the same time or even before the check in suit, so that it was error to direct a verdict for defendants at the close of plaintiffs' evidence.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 599, 647, 648.]

8. LIMITATION OF ACTIONS ⬡⟿28(1)—THREE-YEAR STATUTE—BREACH OF BANK'S DUTY.

An action against a bank for breach of its duty to collect a check and against another bank which took over the assets of the former is barred as against the latter bank by the North Carolina three-year statute of limitations (Revisal 1905, § 395), where not commenced until five years after the transaction and four years after the transfer of the assets.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 134, 142.]

In Error to the District Court of the United States for the Western District of North Carolina, at Salisbury; James E. Boyd, Judge.

Action by the Standard Trust Company of New York and another against the Commercial National Bank and another. Judgment for the defendants, and plaintiffs bring error. Reversed and remanded, with instructions to grant a new trial.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

W. M. Hendren, of Winston-Salem, N. C., and Thomas S. Beall, of Greensboro, N. C., for plaintiffs in error.

O. L. Sapp, of Greensboro, N. C. (Brooks, Sapp & Williams, of Greensboro, N. C., on the brief), for defendants in error.

KNAPP, Circuit Judge. In the court below a verdict was directed for the defendants, and plaintiffs bring the case here on writ of error. The transactions which gave rise to the suit are, briefly, these: On October 4, 1910, Sol N. Cone, of Greensboro, N. C., drew his check for $5,000 on the Commercial National Bank of that place, in which he was a depositor, in favor of Latham, Alexander & Co. of the city of New York, and mailed the same that day to the payees. They received the check the next day and at once deposited it in the Standard Trust Company, with which they did business. It was received and placed to their credit as a cash item, and almost immediately they drew checks against the deposit to its full amount, as they were authorized to do. Though regarded by the bank as in good standing at the time, for all such deposits by them were treated as cash and allowed to be checked

out, it appears that they were actually insolvent and soon afterwards went into bankruptcy. On the day this check was deposited, the Standard Trust Company sent it by mail to the Gerard Trust Company of Philadelphia, which received the same the following morning and sent it that day to the Central National Bank of Philadelphia, and this bank the same afternoon mailed the check for collection and remittance to the Commercial National Bank of Greensboro, on which it was drawn, with the indorsement:

"Pay to the order of any bank, banker, or trust company, prior indorsements guaranteed, October 6, 1910, Central Nat. Bank, Philadelphia, William Post, Cashier."

The evidence tended to show that in due course of mail the check arrived in Greensboro on the evening of the 7th of October and was received by the bank to which it was sent on the morning of the 8th, which was Saturday. Throughout that day, Cone, the drawer of the check, had a balance to his credit of $19,432.52, and this amount was still to his credit when the bank opened the following Monday. He was owing the bank at this time the sum of $10,000, represented by a note not yet due.

Early in the morning of Saturday, Cone attempted to commit suicide, and this led to an investigation which disclosed his insolvency. The bank thereupon charged its note to Cone's account, and on Monday, the 10th, protested the check in question for insufficient funds and returned it to the Philadelphia bank from which it had been received.

In October, 1911, a suit was begun, in a state court of North Carolina, by the Standard Trust Company and the Central National Bank of Philadelphia—the Guaranty Trust Company later coming in as a party plaintiff—against the Commercial National Bank of Greensboro, for the same cause of action as is set up in this suit. In August, 1915, the plaintiffs in that action took a voluntary nonsuit, and early in the following month, nearly five years after the protest of Cone's check, this suit was commenced.

In the meantime, the Standard Trust Company had been taken over by and merged into the Guaranty Trust Company, and the Commercial National Bank had likewise been taken over by and merged into the American Exchange National Bank. The nature of the latter merger, and its effect upon the legal rights of the parties, will be presently considered.

[1] As already stated, the trial resulted in a directed verdict for the defendants. The reasons assigned for this ruling do not appear, and we must therefore examine the several grounds relied upon to defeat the plaintiffs' action. It is insisted, in the first place, that the suit cannot be maintained against the Commercial National Bank because it had ceased, prior to December 11, 1911, to have any corporate existence, and was therefore incapable of being sued or made a party defendant. Upon this assumption it is also argued that the action is barred by section 1200 of the Revisal of North Carolina, which in effect limits the right to sue a corporation to three years after its dissolution. For the purposes of this case it may be conceded that, if the Commercial National Bank was actually "dissolved" in 1911, the lapse

of more than three years would serve as a complete defense to the action. But it seems clear to us that this bank has not been dissolved Indeed, the defendants allege in their answer:

"That on the 15th day of September, 1911, the Commercial National Bank went into voluntary liquidation in consequence of having sold its assets to the American Exchange Bank, a corporation doing a banking business under and by virtue of the laws of the state of North Carolina; that some time thereafter, to wit, on December 11, 1911, the American Exchange National Bank was organized under the national banking laws, and as such took over the assets of the American Exchange Bank and such of the assets of the Commercial National Bank as had been taken over by the American Exchange Bank."

And in another paragraph is the averment "that it went into voluntary liquidation as of that date," November 15, 1911, and "that it complied with the United States statutes regulating the liquidation of banks," which plainly means, and the defendants do not deny, that proceedings were taken under sections 5220 and 5221 of the Revised Statutes of the United States (Comp. St. 1913, §§ 9806, 9808). The status of this bank, therefore, is not that of a dissolved corporation under the laws of North Carolina, but that of a national bank which has gone into voluntary liquidation under the provisions of the national banking act. But a bank so liquidated has not terminated its existence or ceased to be a corporate entity. True, it may not longer engage in the banking business or otherwise exercise its customary functions, but it remains nevertheless a corporation capable of suing and being sued. So the Supreme Court distinctly held in National Bank v. Insurance Company, 104 U. S. 54, 73, 74, 26 L. Ed. 693, from which we quote the following:

"It is to be observed that the sections (5220 and 5221) under which the proceedings took place which, it is claimed, put an end to the corporate existence of the bank, do not refer, in terms, to a dissolution of the corporation, and there is nothing in the language which suggests it, in the technical sense in which it is used here as a defense. The association goes into liquidation and is closed. It is required to give notice that it is closing up its affairs, and in order to do so completely and effectually, to notify its creditors to present their claims for payment. * * *

" 'If there are claims made which the directors of the association are not willing to acknowledge as just debts, there is nothing in the statute which is inconsistent with the right of the claimant to obtain a judicial determination of the controversy by process against the association, nor with that of the association to collect by suit debts due to it. It is clearly, we think, the intention of the law that it should continue to exist, as a person in law, capable of suing and being sued, until its affairs and business are completely settled. The proceeding prescribed by the law seems to resemble, not the technical dissolution of a corporation, without any saving as to the common-law consequences, but rather that of the dissolution of a copartnership which, nevertheless, continues to subsist for the purpose of liquidation and winding up its business."

In the light of this authority, it must be held that the three years' statute of North Carolina here referred to has no application to this case, because it is not the case of a dissolved corporation, and that the Commercial National Bank was still "a person in law," which could sue and be sued, when this action was commenced. Nor are we able to perceive that the plaintiffs' cause of action, if otherwise made out,

was taken away or adversely affected by the fact that a suit was previously brought for the same cause of action in the state court, but discontinued less than a year before the present suit was begun. We find no bar to the maintenance of the action against the Commercial National Bank.

[2] It is next argued that the suit must fail because plaintiffs are not the owners of the check in question, and therefore not such real parties in interest as are necessary to maintain the action. When the payees deposited this check, it was accepted as the equivalent of cash. They were allowed to draw upon it the same as though they had made a deposit of so much money, and in point of fact they did check it all out on the same day. Shortly afterwards, they went into bankruptcy, and the testimony shows that no dividend will be paid to their creditors. Had this been the only transaction, we think it could not be doubted that the bank became the bona fide owner of the check for full value. The legal effect in that case would be the purchase or discount of a negotiable instrument. But because the bank charged the check to the payees' account, when it came back dishonored on the 13th of October, as the bank had the right to do, and as was the usual course of dealing, and because on that day or about that time the payees had an apparent balance to their credit exceeding the amount of the check, it is contended that as matter of law the check must be regarded as received merely for collection. The basis of this contention disappears when the facts are examined. That the books of the bank, when the check was returned, showed a balance greater than its amount, is unquestioned; but that balance, for the most part if not altogether, was made up by credits of other checks or similar deposits which were accepted and treated as cash, but which afterwards turned out not to be good. In short, the proof seems convincing that at no time after the payees had drawn out the amount of this check did they have any substantial sum of actual money in the bank, and when their account was closed at a later date they were overdrawn several hundred dollars in addition to the check in question. The practical result therefore was, whatever the form of bookkeeping, that the bank gave $5,000 for this check and never has or could get back any part of it from the payees. This being so, we deem it not doubtful that the effect of the transactions under review was to make the bank the owner of this check for value, and to clothe it as such owner with all the rights of a holder in due course of a negotiable instrument. Armstrong v. Bank, 133 U. S. 433, 10 Sup. Ct. 450, 33 L. Ed. 747; Burton v. United States, 196 U. S. 283, 25 Sup. Ct. 243, 49 L. Ed. 482; Manufacturing Co. v. Tierney, 133 N. C. 630, 45 S. E. 1026. And this is the opinion of the Supreme Court of North Carolina, which has passed upon the identical facts here of record and said (Standard Trust Co. v. Commercial National Bank, 166 N. C. 112, 117, 81 S. E. 1074, 1076):

"Plaintiff asserts ownership of the check by reason of its dealings with Latham, Alexander & Co., and, without discussing this phase of the case, we merely state that the facts, as now presented, sustain the contention."

The rights of "a holder in due course" are defined in section 2206 of the Revisal of North Carolina as follows:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

We are therefore of opinion, as the case is now presented, that the Standard Trust Company became the beneficial owner of the check for value and without notice, and that it or its successor in title, the Guaranty Trust Company, can maintain this action "free from defenses available to prior parties."

[3-7] We come then to the defense on the merits, which is, in a word, that nothing was shown at the trial which would warrant a jury in charging the defendants with liability. With reference to this contention, it is to be observed that the present suit is not brought upon the check as such, but for damages, measured by its amount, for breach of duty on the part of the Commercial National Bank in failing to collect the check when it was received, and when the drawer, as is alleged, had an ample balance for its payment. As above stated, the proofs make a prima facie case that the check got to Greensboro on the evening of the 7th, and this would justify the inference that it came to the hands of the officers of the bank not later than the following morning. True, the answer avers, though not in the most positive and unqualified terms, that the check was not received until Monday. Such an averment, however, would not of itself overcome the contrary presumption; it would still remain a question for the jury. Davidson S. S. Co. v. U. S., 142 Fed. 315, 73 C. C. A. 425. But whatever the truth in that regard, it is conceded that during the whole of Saturday, the 8th, and at the opening of the bank on Monday, Cone had upwards of $19,000 to his credit. Even if it be assumed—and it is not now necessary to decide the point—that the bank had the right as against plaintiffs to pay itself the $10,000 debt that Cone owed it, as it did, there was still a balance in his favor of $9,432.52, which was apparently available for the payment of this check. And we say this because careful scrutiny of the pleadings and evidence fails to disclose any proof that other checks were paid before the check in question was protested. The allegations of the complaint are to the effect that $10,000 of Cone's balance was applied to the payment of the bank's debt against him, and $6,000 to the payment of two of his checks that came in on Monday, two days after the plaintiffs' check was received. The answer alleges that these other checks were paid before plaintiffs' check was presented, but the defendants offered no evidence, and the fact they assert in this regard is not supported by proof. On the face of it, therefore, as the record now stands, a jury could hardly fail to find that the Commercial Bank might have collected this check if it had acted in good faith and with reasonable promptness. For the fact that the check was protested at the instance of the bank is sufficient evidence that it had been accepted for collection, and the bank cannot be heard to deny that it had thereby made itself the holder's agent. Burton v. United States, 202 U. S. 378, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392. Even if the defendants had introduced evidence to sustain their claim,

there would still be the presumption, arising from the facts above stated, that the check was actually received on Saturday, and this would leave an issue for the jury to determine. Indeed, we go further and hold that if all the checks were received together, or if the others, which concededly did not get to the bank till some time on Monday, were first presented, nevertheless there might be circumstances which would raise a question for the jury as to whether the bank had properly discharged its duty to the plaintiffs. So, from whatever angle the situation is examined, we are led to the conclusion that a case was made for submission to the jury, and it was therefore error to direct a verdict for the defendants.

Upon precisely the same facts, the Supreme Court of North Carolina reached the same conclusion (Standard Trust Co. v. Commercial National Bank, supra), and we quote with approval the following excerpt from its opinion:

"Was the defendant therefore, as agent and drawee, acting in good faith with the plaintiff in handling its check? As the evidence is now to be considered by us, the jury might well have found, if the case had been submitted to them, that it was not, and, if the facts are not as a jury could find them to be upon this evidence, it is defendant's misfortune that the case stopped short of full proof on both sides."

[8] As against the American Exchange National Bank, it is sufficient to say, without discussion, that the action is barred by section 395 of the Revisal of North Carolina, and for that reason the verdict in its favor was properly directed.

The judgment will be reversed, and the cause remanded, with instructions to grant a new trial.

Reversed.