## UNION ELECTRIC STEEL CO. v. IMPERIAL BANK OF CANADA.

(Circuit Court of Appeals, Third Circuit. February 28, 1923.)

No. 2929.

1. **Banks and banking ⊂⊃150—Bank pays for draft by crediting account of drawer, who subsequently checks out amount, and entitled to recover for overdraft.**

    A bank pays for a draft by discounting it for the drawer, placing the amount to the account of the drawer, who thereafter checked against the account, so that, when the draft was dishonored, it was indebted to the bank for an overdraft.

2. **Bills and notes ⊂⊃356—Bank was holder in due course, and not merely for collection.**

    A bank, which paid for a draft by crediting the account of the drawer with the amount thereof, which was subsequently checked out by the drawer, was a holder of the draft in due course for value, within negotiable Instruments Law, § 52, and not merely as a holder for collection, though after the draft was dishonored the bank, as a matter of bookkeeping, transferred the charge against the drawer of the draft from its indirect liability ledger to its direct liability ledger.

3. **Payment ⊂⊃16(I)—Acceptance of note for pre-existing debt is generally not payment.**

    The general rule is that the taking of a note, either of a debtor or of a third person, for a pre-existing debt, is not payment of the debt, unless there is an agreement, express or implied, to take the note as such, or unless the creditor parts with the note, or is guilty of laches in not presenting it for payment in due time.

4. **Payment ⊂⊃73(4)—Evidence held not to show payment of draft by note of drawer.**

    Evidence that a bank, when required by an examiner to put the overdraft of the drawer of a draft discounted by the bank in different form, took the note of the drawer, payable to two others, and by them indorsed to the bank, which note it had never collected, but had renewed from time to time, and that it retained possession of the draft, without any evidence of agreement the note was to be accepted in payment for the draft, does not show that the draft had been paid to the bank, so as to prevent its recovery thereon from the acceptor.

5. **Trial ⊂⊃177—Request by both parties for directed verdict is equivalent to request for findings by court.**

    Where both parties to an action at the conclusion of testimony request the court to direct a verdict, and do nothing more, they thereby declare there is no disputed question of fact, and in effect request the court to find the facts, so that the court's finding, on which the resulting instruction of law is given, is conclusive.

6. **Trial ⊂⊃177—Party may request submission to jury after denial of request for directed verdict.**

    A party may request the direction of a verdict, and on the refusal of the court to give it insist by appropriate request on the submission of the case to the jury, where the evidence is conflicting, or the inferences to be drawn therefrom divergent.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **Trial ☞140(2)—Credibility of interested witness is question for jury.**

Where a witness who testifies to facts in issue is interested in the outcome of the case, his credibility is a fact to be passed on by the jury.

8. **Trial ☞174—Statement of counsel held not general request for directed verdict.**

A statement by counsel for defendant, after plaintiff's counsel had moved for directed verdict, that he thought, as a matter of law, the evidence showed payment of the draft sued on, but, if the court disagreed with him, he thought the credibility of the testimony of a witness presented a question for the jury, shows he did not intend to make a general request for a directed verdict.

9. **Trial ☞140(2)—Credibility of interested witness, whose testimony was unnecessary to recovery by plaintiff, does not defeat right to directed verdict.**

Where the only testimony of an interested witness relied on to require submission of the case to the jury was to the effect that the plaintiff bank had not accepted a note in payment of the draft sued on, and the other evidence placed the burden on defendant of showing the note was accepted in payment, so that the testimony of that witness to negative that fact was not essential to plaintiff's case, it was not error for the court to direct a verdict for plaintiff.

In Error to the District Court of the United States for the Western District of Pennsylvania; Joseph Buffington, Judge.

Action at law by the Imperial Bank of Canada against the Union Electric Steel Company. Judgment for plaintiff on directed verdict, and defendant brings error. Affirmed.

Thorp, Bostwick & Stewart, of Pittsburgh, Pa. (Charles M. Thorp, W. D. Stewart, and Earl F. Reed, all of Pittsburgh, Pa., of counsel), for plaintiff in error.

Cohn, Chormann & Franchot, of Niagara Falls, N. Y. (Basil Robillard, of Niagara Falls, N. Y., of counsel), for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

DAVIS, Circuit Judge. The object of this writ of error is to review the judgment entered in the District Court on a verdict directed by the trial judge.

The proceedings in this case were instituted by the Imperial Bank of Canada, against the Union Electric Steel Company, a corporation of Delaware, doing business in the Western district of Pennsylvania, to recover the amount of three "trade acceptances" or bills of exchange drawn by the Volta Manufacturing Company, Limited, of Canada, a foreign corporation, and accepted by the Steel Company. The issues raised on all three bills are alike, and so we shall consider only those pertaining to the following bill:

"Welland, Ontario, January 31, 1921.    $5,500.00.

"Sixty days after date, pay to the order of ourselves fifty-five hundred no/100 dollars. The obligation of the acceptor hereof arises out of the purchase of goods from the drawer, maturity being in conformity with the original terms of the purchase.

"Volta Manufacturing Company, Limited,
"Per Chas. W. Sims, Secretary-Treasurer."

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There were other bills of the same nature, previously drawn by the Volta Company, accepted by the Steel Company, and still held by the bank. Shortly after the bill of January 31st was given, an earlier one became due. The Steel Company was unable to pay it, and, desiring an extension, sent it to the Volta Company, which took it to the bank and had it renewed. About this date, and before maturity, the bank discounted the bill under consideration and credited the proceeds, less discount and interest, to the current account of the Volta Company. The Volta Company drew against this account and when the bill became due, it was not paid, and the bank charged it back to the account of the Volta Company and credited the company with that amount on the indirect liability ledger. This increased the existing overdraft in the account of the Volta Company. The bank brought suit on this bill against the Steel Company, the acceptor, and the trial judge directed a verdict in favor of the bank.

All the assignments of error support the propositions that the trial judge erred in holding that the bank was the owner and holder of the bill for value, that it had not been paid, and that there were no questions requiring submission of the case to the jury.

[1] The Steel Company contends that the bank was not the owner of the bill, because "there is no competent testimony showing that Volta Company checked out the proceeds of these alleged discounted acceptances." But the testimony, admitted without objection, and in fact brought out on cross-examination, shows beyond question that the bill was discounted and the proceeds were placed to the credit of the Volta Company in its current account. This account was checked against by the Volta Company, and when the renewal bill became due this same current account was overdrawn. There is no hint that the proceeds of the discounted bill disappeared in any other way than through checks drawn against that account by the Volta Company.

[2] Defendant further contends that, if the bank ever had title to the bill, it was lost when the bill, upon nonpayment, was charged back to the Volta Company; that this could not have been done, if title had been in the bank, and not in the Volta Company. The bank has, as books of entry, a collection register, a discount register, a direct-liability ledger, and an indirect-liability ledger. The Volta Company indorsed the bill, and when it was discounted the proceeds were placed to the credit of the Volta Company, and a charge was made against the company in the indirect-liability ledger as an indorser. When the bill was not paid at maturity it was protested, and the Volta Company became primarily liable, and so the bank credited the Volta Company with the amount of the bill on the indirect-liability ledger, and charged it with the same amount on the direct-liability ledger. The Volta Company was liable all the time, and the "charging back" was not the creation of a liability where none existed before. It was a mere bookkeeping transaction, to show direct and indirect liability. The bill was complete and regular on its face, and was discounted in good faith by the bank before maturity without notice of any infirmity in it, and the bank was therefore a holder for value in due course. Section 52, Negotiable Instruments Law (P. L. Pa. 1901, p. 202).

In the case of Standard Trust Co. of New York v. Commercial National Bank et al., 240 Fed. 303, 153 C. C. A. 229, one Sol N. Cone, of Greenboro, N. C., drew his check in favor of Latham, Alexander & Co., of New York City, on the Commercial National Bank of Greenboro. Latham, Alexander & Co. deposited the check in the Standard Trust Company of New York City, which placed it as cash to the account of Latham, Alexander & Co. On the same day Latham, Alexander & Co. drew checks against the deposit to its full amount. In due time the check reached the Commercial National Bank, and, Cone in the meantime having become insolvent, the check was protested, returned to the Standard Trust Company and charged to the account of Latham, Alexander & Co., which, contrary to belief and reputation, was actually insolvent when the deposit was made, and had gone into bankruptcy before the check was returned. In a suit by the Standard Trust Company against the Commercial National Bank, the bank, because the Trust Company "charged back" the check to Latham, Alexander & Co. when it was returned protested, contended that the Standard Trust Company was not the owner of the check, and that as a matter of law the check must be regarded as received merely for collection.

The facts and contentions in this case are practically identical with those in the case under consideration. Defendants here contend, as before stated, that:

"Conceding, for the sake of argument, that plaintiff did have title to the acceptances, we respectfully submit that upon the charging back it lost all title."

And further:

"The fact that the bank had the right to, and actually did, charge back the unpaid acceptances to Volta, can only be explained by holding that the plaintiff simply took these acceptances for collection."

The Circuit Court of Appeals for the Fourth Circuit in the Standard Trust Company Case, after discussing the contention of counsel, concluded by saying:

"The practical result therefore was, whatever the form of bookkeeping, that the bank gave $5,000 for this check and never has or could get back any part of it from the payees. This being so, we deem it not doubtful that the effect of the transactions under review was to make the bank the owner of this check for value, and to clothe it as such owner with all the rights of a holder in due course of a negotiable instrument."

When the bill in question was deposited in the bank, discounted, and the proceeds were placed to the credit of the Volta Company, title to it, in the absence of any agreement to the contrary, was thereafter in the bank. These transactions were the ordinary method of the transfer or sale of the instrument by the holder and the purchase of it by the bank. When it was not paid at maturity and protested, the fact that the liability of the Volta Company was transferred from the indirect-liability ledger to the direct-liability ledger was a mere bookkeeping arrangement and did not vary the legal effect of the whole transaction. It was the bank's method of keeping its books. Burton v. United States, 196 U. S. 283, 297, 25 Sup. Ct. 243, 49 L. Ed. 482; In re Grocers' Baking Co. (D. C.) 266 Fed. 900, 908.

Has the bank been paid? The facts out of which this contention arises are these: A bank examiner required that an overdraft of the Volta Company in the bank, including the amount of the bill in question, be put in another form. Consequently on March 10, 1922, nearly 10 months after the suit was brought, the Volta Company gave a promissory note, to cover the amount of the overdraft, to R. Turnbull and J. Young, who indorsed it to the bank, which discounted it and placed the proceeds to the credit of the Volta Company. This note has never been paid, but has been renewed from time to time. The bill on which this suit is based was not demanded by the Volta Company, or by Turnbull and Young, when they gave the note to the bank, and it still remains in its possession. Does this transaction amount to payment of the original bill or renewals thereof?

[3] The general rule in this country and England is that the taking of a note either of a debtor or a third person for a pre-existing debt is not payment, unless there is an agreement, express or implied, to take the note as such, or unless the creditor parts with the note, or is guilty of laches in not presenting it for payment in due time. Atlas S. S. Co., Limited, v. Colombian Land Co., 102 Fed. 358, 42 C. C. A. 398; United States v. Sunday Creek Co. (D. C.) 194 Fed. 252, Maxwell v. Holmesville Mill & Power Co., 231 Fed. 684, 145 C. C. A. 570; United States Bank v. Daniel et al., 37 U. S. (12 Pet.) 32, 56, 9 L. Ed. 989; Lyman et al. v. Bank of the United States, 53 U. S. (12 How.) 225, 243, 13 L. Ed. 965. "Nothing is better established than that, in the absence of any special agreement to the contrary, the mere acceptance, by a creditor from his debtor, of the note or check of a third person, to the creditor's order, for a pre-existing indebtedness, is not absolute but merely conditional payment, defeasible on the dishonor or nonpayment of the note or check, and, in that event, the debtor remains liable for his original debt," and the burden of proving such special agreement is on the debtor. Holmes & Sons v. Briggs & Drum, 131 Pa. 233, 240, 18 Atl. 928, 929, 17 Am. St. Rep. 804.

The note of a third party, given in payment of a pre-existing debt, is collateral security, or at most conditional payment only. Philadelphia v. Stewart, 195 Pa. 309, 314, 45 Atl. 1056. "To make a note payment absolute, there must be an absolute agreement by the creditor to receive it as such," and the burden of proving this is upon the debtor. Philadelphia et al. v. Neil & Lincoln Savings & Trust Co., 211 Pa. 353, 363, 60 Atl. 1033, 1035. The parties may expressly agree that the giving of a note may extinguish a pre-existing debt, but, in the absence of agreement, there is no presumption that the note is accepted as payment, and the evidence of express agreement must be clear to establish that fact. In re Wegman Piano Co. (D. C.) 221 Fed. 128.

[4] The evidence does not disclose any express agreement that the note given by the Volta Company to Turnbull and Young, and by them indorsed to the bank, was to be received by the bank as payment of the bills. Retention of the bill by the bank upon the receipt of the note is inconsistent with an implied agreement that the note was regarded as payment. We are driven to the conclusion that the bank has not been paid.

Did the court err in directing a verdict? At the close of the case the court said: "Both sides think this is a question of law." Counsel for plaintiff replied: "Yes, I think it is." Whereupon counsel for defendant said:

"I think as a matter of law that payment has been shown of these trade acceptances, and that it is entirely immaterial as to whether payment was made before or since suit was brought; but I wish to be understood on this question. I contend as a matter of law that payment has been shown; but, if the court disagrees with me, then I say it is at least a question of fact for the jury, in view of Mr. Ball's attempt to testify as to the arrangement by which the discounting of the new note was not to be considered as payment."

[5, 6] When both parties to an action at the conclusion of testimony ask the court to direct a verdict and do nothing more they thereby declare that there is no disputed question of fact. This is equivalent to a "request that the court find the facts," and the finding made by the court, upon which the resulting instruction of law is given, is conclusive. Such request assumes the facts to be undisputed, and in effect submits to the trial judge the determination of the inferences to be drawn from them. "But a party may request the direction of a verdict, and, upon the refusal of the court to give it, insist by appropriate request upon the submission of the case to the jury, where the evidence is conflicting or the inferences to be drawn from the testimony divergent." Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; Empire State Cattle Co. v. Atchison, Topeka & Santa Fé R. R. Co., 210 U. S. 1, 8, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70.

[7, 8] Where a witness, who testifies to facts in issue, is interested in the outcome of the case, his credibility is a fact to be passed upon by the jury. Second National Bank v. Hoffman, 229 Pa. 429.[1] The statement of counsel for defendant shows that he did not intend making a general request for a direction of a verdict. If the court disagreed with him, then he contended that whether or not there was an agreement was a question of fact for the jury, in view of Mr. Ball's testimony that the new note was not to be considered as payment. It may be that Mr. Ball was interested in the outcome of this case. After being unable to testify in the afternoon as to whether or not there was an agreement that the note was to be received as payment of the bill, somehow next morning he positively testified that there was no such agreement. If it was necessary for the bank to establish that there was no agreement, the credibility of Mr. Ball was a question for the jury, and it was error to direct a verdict for the plaintiff. There was no evidence of an express agreement.

[9] In view of this fact, and the retention of the bill by the bank upon receiving the note, the burden was on the defendant to prove that there was an agreement that the note was to be received as payment. The plaintiff did not have to prove the negative and this is all that Ball's testimony tended to establish. His testimony on this point may be altogether disregarded. Therefore his credibility was not a question for the jury. There was no other evidence which justified the submission of the case to the jury. We have considered all the assignments of error and resolved them against the plaintiff in error.

Counsel for defendant has presented a most carefully prepared and

[1] 78 Atl. 1002.

exhaustive brief; but he was limited to the facts in the case, and under the law we are compelled to conclude that there was no error in the trial, and the judgment of the District Court is affirmed.